**Richard J. PUTNAM and Doretha G. Putnam**

v.

**The UNITED STATES of America.**

**Civ. A. No. CV 91–1344.**

United States District Court, W.D. Louisiana, Lake Charles Division.

April 26, 1993.

T. Glynn Blazier, T.A., Edwin K. Junter, Timothy O'Dowd, Hunter Boland, Lake Charles, for plaintiffs.

Neal I. Fowler, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

HEEBE, District Judge.

This cause came on a previous day on the motions of plaintiffs, Richard J. Putnam and Doretha G. Putnam, and defendant, the United States of America, for summary judgment pursuant to Fed.R.Civ.P. 56. The parties agreed to waive oral argument and to rely on their briefs.

The Court, having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

**IT IS THE ORDER OF THE COURT** that the motion of plaintiffs, Richard J. Putnam and Doretha G. Putnam, for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same is hereby, **GRANTED.**

**IT IS THE FURTHER ORDER OF THE COURT** that the motion of defendant, the United States of America, for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same is hereby, **DENIED.**

## REASONS

All parties to this litigation have stipulated to the following facts.

The plaintiffs, United States Senior District Judge Richard J. Putnam [hereinafter, "Judge Putnam"] and Doretha G. Putnam were married in 1940 and, since that time, have resided in Abbeville, Louisiana. On December 12, 1975, Judge Putnam retired from "regular active judicial service" as a United States District Judge in Lafayette, Louisiana due to disability pursuant to 28 U.S.C. § 372(a). As a consequence, Judge Putnam's residence in Abbeville became his statutorily designated official duty station pursuant to 28 U.S.C. § 374.

During the years 1985 and 1986, a shortage of active judges prompted the Chief Judge of the Court of Appeals for the Fifth Circuit to designate Judge Putnam as a United States Senior District Judge (retired) to perform judicial duties in the United States District Courts for the Western, Eastern, and Middle Districts of Louisiana.[1] This assignment was made on a year to year basis. Thereafter, in 1985 and 1986, Judge Putnam performed judicial duties primarily for the United States District Court for the Western District of Louisiana at Lafayette, Louisiana. He was provided chambers in the federal courthouse in Lafayette, Louisiana and his

---

1. *See* 28 U.S.C. § 292(b) and 294(c).

principal location for conducting official court business was at the courthouse. Throughout this period, however, Judge Putnam maintained no office at his official duty station in Abbeville.[2]

The distance between Judge Putnam's residence in Abbeville, Louisiana, and the courthouse in Lafayette, Louisiana is approximately twenty miles. Since there is no public transportation available between Abbeville and Lafayette, Judge Putnam's only means of transportation to his provided chambers during 1985 and 1986 was travel by his privately owned automobile.

The plaintiffs filed joint Form 1040 income tax returns with the Internal Revenue Service for 1985 and 1986. On both original income tax returns, Judge Putnam reported his transportation expenses between his residence in Abbeville and the courthouse in Lafayette as deductible business expenses.[3]

The Internal Revenue Service audited the plaintiffs' Form 1040 returns for the years 1985 and 1986. The Commissioner of Internal Revenue determined that the transportation expenses incurred by Judge Putnam between his Abbeville residence and the Lafayette courthouse were nondeductible personal expenses.[4] The Internal Revenue Service then made an audit deficiency assessment that calculated additional tax based on the denial of the claimed business expense deductions against the plaintiffs for the 1985 and 1986 tax years.[5] The plaintiffs paid the assessed taxes and interest in full and filed timely Form 1040X amended income tax returns as claims for refund.[6]

The Internal Revenue Service disallowed the plaintiffs' 1985 and 1986 claims for refund in the amounts of $2,781.00 and $1,320.00, respectively. The plaintiffs now seek a refund of these amounts, the total of all interest paid with respect to their deficiency assessments, plus all interest and reasonable litigation costs as provided by law.[7]

2. Judge Putnam did own a substantial part of a complete law library in Abbeville which he had access to at all times. *See* Stipulation # 7.

3. On the original Form income tax return for the year 1985, Judge Putnam reported employee business expenses of $7,900, (including a vehicle expense deduction of $6,663, a parking expense deduction of $5, and travel expense deductions of $1,232), subtracted employer reimbursements of $2,796, and claimed a net adjustment to income of $5,104.

On the original Form 1040 income tax return for the year 1986, Judge Putnam reported employee business expenses of $4,655, (including a vehicle expense deduction of $2,053, an automobile depreciation expense of $1,367, and travel expense deductions of $1,235), subtracted employer reimbursements of $3,218, and claimed a net adjustment to income of $1,437. Copies of the Plaintiffs' 1985 and 1986 Form 1040 returns are attached to the parties' Stipulations as Exhibit A and B, respectively.

4. The Commissioner also found that the employer reimbursements for 1985 should be $4,188 rather than $2,796, based on the actual amount received by Judge Putnam from the Administrative Office of the United States Courts. He further determined that the $1,392 in additional employer reimbursements was income of the plaintiffs but that no business expense deduction was allowable for the corresponding expenses on the basis that the reimbursements were for nondeductible living expenses. *See* Stipulation # 16.

The $1,392 amount was incurred by Judge Putnam for midday meal expenses only on the days that he drove to the federal courthouse in Lafayette and returned back to his home in Abbeville on the same day. In order to obtain the $1,392 reimbursement, Judge Putnam was required to, and did account to the Administrative Office of the United States Courts.

5. The deficiency assessment against plaintiffs for the 1985 year amounted to $3,239.60 in tax and $977.30 in interest. The 1986 assessment amounts to $1,320.40 in tax and $260.98 in interest.

6. In their 1985 Form 1040X claim for refund, the plaintiffs reported $7,745 of employee business expenses, subtracted employer reimbursements of $2,796, and claimed a net adjustment to income of $4,949 for employee business expenses. The plaintiffs did not claim the $1,392 meal reimbursement as either a business expense deduction or income in their 1985 refund claim. *See* Exhibit D attached to the Stipulations.

In their 1986 Form 1040X claim for refund, the plaintiffs reported $5,544 of employee business expenses, subtracted employer reimbursements of $2,796, and claimed a net adjustment to income of $2,748 for employee business expenses. *See* Exhibit E attached to the Stipulations.

7. In their Motion, the plaintiffs claim these amounts equal $3,928.04 for 1985 ($2,781.00 in tax plus $1,147.04 in interest), and $1,581.38 for 1986 ($1,320.40 in tax plus $260.98 in interest). The plaintiffs also claim under I.R.C. § 6611 they are entitled to interest on the totals for both

Under 28 U.S.C. § 456(a), the Director of the Administrative Office of the United States Courts shall pay each judge of the United States, and each retired judge recalled or designated and assigned to active duty, while attending court or transacting official business at the place other than his official station for any continuous period of less than 30 calendar days (1) all necessary transportation expenses certified by the judge; and (2) payments for subsistence expenses. The Director shall also pay each judge recalled or designated and assigned to active duty, while attending court that exceeds in duration a continuous period of 30 calendar days, all necessary transportation expenses and actual and necessary expenses of subsistence actually incurred.

The Government does not deny that § 456 allows for *reimbursement* of all necessary transportation expenses. It argues that any reimbursement actually received by the Judge qualifies as *taxable* ordinary income. It also contends Judge Putnam may not take business deductions for those "transportation expenses" between Abbeville and Lafayette that were not reimbursed as those expenditures represent nondeductible commuting expenses.[8] In considering both of the Government's arguments, this Court must decide the issue of whether Judge Putnam's traveling expenses qualify as business expenditures under § 162 of the I.R.C.

In the litigation of tax matters, the burden of proof rests with the taxpayers. *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935). Since a deduction from gross income is a matter of grace, not of right, this Court must initially presume that Judge Putnam's claimed expenses are nondeductible. *Commissioner v. Tellier,* 383 U.S. 687, 693, 86 S.Ct. 1118, 1121, 16 L.Ed.2d 185 (1966); *Commissioner v. Sul-*

*livan,* 356 U.S. 27, 28, 78 S.Ct. 512, 513, 2 L.Ed.2d 559 (1958).

As a general matter, the Internal Revenue Code provides that "no deduction shall be allowed for personal, living, or family expenses." I.R.C. § 262. However, under I.R.C. § 162(a) taxpayers are entitled to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including ... (2) traveling expenses ... while away from home in the pursuit of a trade or business; ..."

In *Commissioner v. Flowers,* 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the Supreme Court interpreted this above language to mean that traveling expenses must satisfy three conditions in order to be deductible:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

*Id.* at 470, 66 S.Ct. at 252.

*Flowers* involved a taxpayer who maintained a law practice in Jackson, Mississippi for almost forty years and who later became general counsel for a railroad in Mobile, Alabama. *Id.* at 467, 66 S.Ct. at 251. Under his

---

years. The Government does not contest the claimed refund amounts themselves, but instead simply contests the allowance of any refund at all. The Court's discussion of plaintiffs' entitlement to any refund appears *infra* as it concerns the legal issues involved here.

**8.** Treasury Regulation § 1.62(17)(b)(3) allows a taxpayer to secure a deduction if his "ordinary and necessary business expenses exceed the total of the amounts charged directly or indirectly to

the employer and received from the employer as advances, reimbursements, or otherwise...." For both 1985 and 1986, Judge Putnam's claimed business expenses exceeded his reimbursements, and he took the deductions currently at issue.

Since the meaning of the applicable Treasury Regulations is not at issue here, this Court reserves its discussion of the regulations governing reimbursement and deductions, *infra.*

agreement with the railroad, the taxpayer continued to reside in Jackson, and paid the expenses he incurred in traveling between Jackson and Mobile for the business of the railroad. *Id.* For the tax years in question, the lawyer sought to deduct these expenses. *Id.* at 468, 66 S.Ct. at 251. The Supreme Court, however, disallowed the expenses. It held the taxpayer's costs were neither necessary nor appropriate to the development and pursuit of the lawyer's business as general counsel for the railroad, and, as such, did not satisfy the third necessary condition for a business deduction. *Id.* at 473, 66 S.Ct. at 253. As the Court stated:

> The facts demonstrate clearly that the expenses were not incurred in the pursuit of the business of the taxpayer's employer, the railroad. Jackson was his regular home. Had his post of duty been in that city the cost of maintaining his home there and of commuting or driving to work concededly would be non-deductible living and personal expenses lacking the necessary direct relation to the prosecution of the business. The character of such expenses is unaltered by the circumstance that the taxpayer's post of duty was in Mobile, thereby increasing the costs of transportation, food and lodging. Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the same.

*Id.* at 473, 66 S.Ct. at 253.

*Flowers* stands as landmark precedent holding commuting expenses are non-deductible regardless of where one chooses to live. According to the Government, the principle of *Flowers* applies here since "Judge Putnam was not forced to move to, or required to remain in Abbeville and incur commuting expenses due to the exigencies of federal court business." It contends Judge Putnam's "home" within the meaning of I.R.C. § 162(a) is the federal courthouse in Lafayette, rather than his residence in Abbeville. Therefore, his claimed expenses qualify as nondeductible commuting costs. *See also, Steinhort v. Commissioner,* 335 F.2d 496, 503 (5th Cir.1964) ("deeply ingrained in the whole tax structure is the basic proposition that the cost of going to and from home and an established place of business is a nondeductible personal expenditure").

Throughout their tax proceedings, however, the plaintiffs have asserted that Judge Putnam's "home" for purposes of I.R.C. § 162(a) is his residence in Abbeville. They argue that the Fifth Circuit has restricted the word "home" in I.R.C. § 162(a)(2) to the taxpayer's residence. *See, e.g., United States v. LeBlanc,* 278 F.2d 571, 574–75 (5th Cir.1960). Alternatively, the plaintiffs maintain that regardless of the Fifth Circuit's interpretation of "home," Congress has declared in 28 U.S.C. § 374 that a retired judge's *residence* is his official station or post of duty for purposes of travel and subsistence. Since his residence is Abbeville pursuant to 28 U.S.C. § 374, plaintiffs maintain that Abbeville is Judge Putnam's home pursuant to I.R.C. § 162(a).

Turning our attention to the first condition of *Flowers,* Judge Putnam's costs qualify as "reasonable and necessary traveling expenses." 326 U.S. at 470, 66 S.Ct. at 252. Traveling expenses include travel fares, meals and lodging, and expenses incident to travel such as expenses for sample rooms, telephone and telegraph, public stenographers, etc. Treas.Reg. § 1.162–2(a). Under 28 U.S.C. § 456(a), each retired judge assigned to active duty, while attending court or transacting business at a place other than his official station, shall be paid all necessary traveling expenses. In light of both the treasury regulation and statute, Judge Putnam's claimed deductions for travel expenses, automobile costs and depreciation, and meals satisfy the "ordinary and necessary" condition for business deductions under I.R.C. § 162(a).

In fact, in their briefs, the parties do not seriously address the first condition necessary for an allowance of the plaintiffs' claimed business deductions. They acknowledge the dispute here centers around the construction to be given to the second and third prongs of the *Flowers* test for allowing a business deduction—that the "expense ... be incurred 'while away from home,'" and that "[t]he expense ... be incurred in pur-

suit of business." 326 U.S. at 470, 66 S.Ct. at 252.

The Internal Revenue Service (I.R.S.) has generally defined "home" referred to in I.R.C. § 162(a)(2) as the place at which a taxpayer conducts his trade or business.[9] Rev.Rul. 75–432, 1975–2 C.B. 60. If the taxpayer is engaged in business at two or more separate locations, the "tax home" for purposes of I.R.C. § 162(a)(2) is located at the principal place of business during the taxable year. *Id.; Markey v. Commissioner,* 490 F.2d 1249 (6th Cir.1974); Rev.Rul. 60–189, 1960–1 C.B. 60. However, a taxpayer's "tax home" will not be his principal place of employment if that employment is merely temporary. *Peurifoy v. Commissioner,* 358 U.S. 59, 60–61, 79 S.Ct. 104, 105–06, 3 L.Ed.2d 30 (1958). It should, of course, be emphasized that the location of an employee's tax home is necessarily a question of fact that must be determined on the basis of the particular circumstances of each case. Rev. Rul. 75–432, 1975–2 C.B. 60. But the basic principle is that an employee is considered to maintain a residence at or in the vicinity of that employee's principal place of business. *Id.*

The Fifth Circuit has repeatedly confronted the issue of what constitutes a tax home.[10] In so doing, it has adopted the position of the I.R.S. that the term "home" for purposes of § 162 means the vicinity of the taxpayer's principal place of business and not where his personal residence is located. *Michel v. Commissioner,* 629 F.2d 1071, 1073 (5th Cir. 1980); *Curtis v. Commissioner,* 449 F.2d 225, 227 (5th Cir.1971); *Jones v. Commissioner,* 444 F.2d 508, 509 (5th Cir.1971).

Despite its above pronouncements on the definition of a "tax home," the Fifth Circuit has recognized that differences in facts may allow for exceptions to the above rule. Most notably, the appellate court has held that where Louisiana law compels a Louisiana Supreme Court Justice to live in one district but to work in another, the Justice has incurred traveling expenses "while away from home." *LeBlanc,* 278 F.2d at 574–577.

In *LeBlanc,* the Fifth Circuit considered whether the taxpayer, Justice Samuel LeBlanc, could deduct the rental value of an apartment in New Orleans as traveling expenses while away from his Napoleonville home under the 1939 statutory predecessor to § 162(a)(2). *Id.* at 572. Justice LeBlanc was an Associate Justice of the Supreme Court of Louisiana from December 1949 until his retirement in December 1954. *Id.* Prior to his election in 1949, he was a lifelong resident of Napoleonville, where he lived with his wife and children and practiced law. *Id.* at 573. During the tax years in issue, Justice LeBlanc resided in a rented apartment in New Orleans with his wife which was only occupied when the Justice had to be in New Orleans in attendance upon the court during its sessions. *Id.* However, since the Justice's work required that he spend three-fourths of his year in New Orleans, the Government contended that the apartment there was his real home and, as such, the expenses were non-deductible. *Id.* at 574. Writing for the Fifth Circuit, Judge John R. Brown

---

9. For many years, the I.R.S. has maintained its position on the "tax home" location issue with respect to I.R.C. § 162(a)(2). The United States Supreme Court has never decided this exact issue. It did, however, recently decide whether an office in a taxpayer's home qualifies as a "principal place of business" under 26 U.S.C. § 280A(c)(1)(A). *Commissioner v. Soliman,* — U.S. ——, 113 S.Ct. 701, 121 L.Ed.2d 634 (1993). In doing so, the Court did not need to define the meaning of a "tax home" *qua* its location, since § 280A(c)(1) involves the deductibility of expenses as they concern the business use of the taxpayer's actual home, itself.

10. In *Flowers v. Commissioner,* 148 F.2d 163, 164 (5th Cir.1945), *rev'd,* 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the Fifth Circuit initially held that "home," as used in the earlier corre-

sponding tax statute to I.R.C. § 162(a)(2), means "place where one in fact resides . . . and does not mean the post, station, or place of business where the taxpayer is employed." Although the Supreme Court later overruled the result reached by the Fifth Circuit, it did not choose to address the court's definition of "tax home." Instead, the Supreme Court rested its entire decision on the failed satisfaction of the third condition for allowance of business deductions. 326 U.S. at 472–473, 66 S.Ct. at 253–54.

While it is true that the Supreme Court has not explicitly rejected the Fifth Circuit's *Flowers'* definition of a tax home, the Fifth Circuit has not relied on the definition of tax home set forth in its *Flowers* opinion. *See Brinley v. Commissioner,* 782 F.2d 1326, 1333–34 (5th Cir.1986).

rejected the Government's position and held that for the purposes of the statute, Justice LeBlanc's "tax home" was his residence in Napoleonville, and not the apartment in New Orleans. *Id.* at 574–75. Furthermore, he found that the travel expenses were motivated by the exigencies of the Justice's business and, consequently, satisfied the third condition of *Flowers* necessary for a business deduction. *Id.*

The plaintiffs assert that, as in *LeBlanc,* an exception applies here to the general rule that a taxpayer's "home" for purposes of I.R.C. § 162(a)(2) is where his principal place of business is. They contend that under 28 U.S.C. §§ 374 and 456 [hereinafter, "reimbursement statutes"], Judge Putnam's tax home is in Abbeville, and not in Lafayette, his place of business as a United States Senior District Judge. They also claim the legislative history, language and policy of § 374 evidence Congress' determination that Judge Putnam's expenses at issue are ordinary and necessary expenses incurred in pursuit of business. I.R.C. § 162(a)(2).

In relevant part, 28 U.S.C. § 374 provides:

Retired judges of the United States are not subject to restrictions as to residence. The place where a retired judge maintains the actual abode in which he customarily lives shall be deemed to be his official station for the purpose of section 456 of this title.

28 U.S.C. § 456 authorizes the Director of the Administrative Office of the United States Courts to pay all the necessary transportation expenses and subsistence expenses for judges who transact official business at a place other than their official duty station. In so doing, the statute defines where the official duty station for a district judge shall be located. For example, under subsection (d):

The official duty station of each district judge shall be that place where a district court holds regular sessions at or near which the judge performs a substantial portion of his judicial work, which is near-

est the place where he maintains his actual abode in which he customarily lives.

28 U.S.C. § 456(d).

However, the dispositive provision of § 456 concerning this litigation finds itself in subsection (f) which states:

The official duty station of a retired judge shall be established in accordance with section 374 of this title.

28 U.S.C. § 456(f).

When Congress uses a nontechnical word in a tax statute, presumably it wants administrators and courts to read it in the way that ordinary people would understand, and not "to draw on some expressed spirit outside the bounds of the normal meaning of the words." *Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). Under I.R.C. § 162(a)(2), Congress permits the deduction of traveling expenses incurred "while away from *'home'*." (Emphasis added). Webster's New International Dictionary (3d. Ed.1961) defines "home" as "the house and grounds with their appurtenances habitually occupied by a family ...; a private dwelling: HOUSE." Within the statutory language contained in the reimbursement statutes, Congress uses the word "abode" to signify where a retired judge's official station shall be located. The aforementioned dictionary defines abode as the "place where one abides or dwells: HOME." *Id.* It is patently obvious, therefore, that the ordinary meaning of the term "abode," as used within 28 U.S.C. §§ 374 and 456, is synonymous with the ordinary meaning of "home," the term Congress employs within I.R.C. § 162(a)(2).

Taken alone, the language of the reimbursement statutes treats Judge Putnam's "home" as Abbeville. That is the place where he dwelled, and continues to abide. But the issue here admits of much more difficulty. As noted earlier, the I.R.S. and the Fifth Circuit define "home," as used within I.R.C. § 162(a)(2), as a taxpayer's "principal place of business." So while this Court must accept the Fifth Circuit's definition of a "home" under § 162(a)(2), its only guidance as to the meaning of "abode" under the reimbursement statutes finds itself in the assumption that Congress expresses its pur-

pose by the ordinary meaning of the word. *United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984); *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1961). And the ordinary reading to be drawn from the word "abode"—"dwelling"—conflicts with the Fifth Circuit's interpretation of "home" as used within the tax statute.

Neither the plaintiffs nor the Government has directed the Court to any caselaw interpreting the meaning of "abode" as contained within the reimbursement statutes insofar as it involves § 162(a)(2) of the Internal Revenue Code, and the Court's search has not found any. Nevertheless, while the Court finds no case directly on point, it finds at least one case construing I.R.C. § 162 to be persuasive on the tax issue to be decided here.

In *Commissioner v. Stidger,* 386 U.S. 287, 288, 87 S.Ct. 1065, 1066, 18 L.Ed.2d 53 (1967), the Supreme Court decided whether expenditures for meals by a military officer stationed at a post to which his dependents were prohibited from accompanying him were deductible traveling expenses under I.R.C. § 162(a)(2) or were non-deductible personal expenses under I.R.C. § 262. The taxpayer, a Marine Corps captain, was originally stationed in California where he lived with his family. He was later transferred to Iwakuni, Japan on a tour of duty, and because dependents were prohibited from accompanying Marine Corps personnel there, the taxpayer's family remained in the United States. During his tour of duty, the taxpayer received additional compensation for travel away from Iwakuni. He also received tax-free monthly allowances for quarters and subsistence. For the tax year in question, the captain took deductions for the entire cost of his meals at Iwakuni. *Id.* at 288–289, 87 S.Ct. at 1066–67. Because these expenditures were away from his home in California, he claimed them as deductible. The Commissioner disagreed, viewing Iwakuni as the taxpayer's home, and his meals as personal expenses. *Id.* at 292, 296, 87 S.Ct. at 1068, 1071.

In resolving the issue in *Stidger,* the Supreme Court found it unnecessary to decide whether the Commissioner's interpretation of "home" was correct. *Id.* at 292, 87 S.Ct. at 1068. Instead, it examined the terminology of the military services and the language and policy of the statutory provisions relating to travel allowances of military personnel and determined that the military officer's "permanent duty station" was his "tax home" for purposes of I.R.C. § 162(a)(2). *Id.* The Court also noted that Congress traditionally provided a special system of tax-free allowances for military personnel. *Id.* at 294, 87 S.Ct. at 1069. It recognized that:

> Underlying the system of special allowances is congressional recognition of the fact that military life poses unusual financial problems. The system is designed to provide complete and direct relief from such problems as opposed to the incomplete and indirect relief which an income tax deduction affords to a civilian business traveler.

*Id.* at 295, 87 S.Ct. at 1070. Based on the travel-expense provisions available to military personnel, the Supreme Court held that the taxpayer's home was Iwakuni. *Id.* at 295–296, 87 S.Ct. at 1070–71. It then disallowed the taxpayer's claimed business deductions. *Id.* at 296, 87 S.Ct. at 1071.

■ While it is true that the outcome of *Stidger* effectively left the military taxpayer's "tax home" as his "principal place of business," the Supreme Court rested its result on its analysis of the military services' terminology and statutory policies as they both related to the tax code. *Id.* at 292, 87 S.Ct. at 1068. Thus, *Stidger* persuades this Court to examine the legislative history and policies of the Congressional reimbursement statutes for judges in order to determine the meaning of plaintiffs' "abode" for taxation purposes.

Prior to the amendment of 28 U.S.C. § 374, Congress enacted "legislation to encourage the use of the services of retired judges and to facilitate their assignments throughout the Nation." S.Rep. No. 998, 86th Cong., 1st Sess. U.S.Code Cong. & Admin.News pp. 2649, 2650 (1959). The hope was that such legislation would encourage the willingness of more federal judges to accept judicial assignment where backlogs of cases existed in federal courts. *Id.* at 2650.

Having examined the pre–1959 legislation relating to travel expenses of retired judges, Congress found it unfair to expect a retired judge to travel away from home on official assignment without being entitled to reimbursement for the travel. *Id.* at 2649–2650. At that time, the law denoted a retired judge's official station as the circuit or district for which he was appointed *regardless* of where he may have moved his residence after retirement. *Id.* The result, in some cases, was that:

> a judge who had been appointed to the U.S. District Court for the District of Columbia and who, upon retirement, moved his residence from the District to somewhere in the western part of the United States, could accept a judicial assignment to sit in the southern district of New York. *However, reimbursement for his travel and subsistence expenses would have to be measured from the District of Columbia to New York and not from his home in the western part of the country.*

*Id.* (Emphasis added).

In the example mentioned above, Congress recognized the obvious unfairness in expecting a retired judge to travel across the country and back without being reimbursed for that travel. Therefore, with an eye toward encouraging retired judges to accept more assignments in federal courts with case backlogs, Congress amended 28 U.S.C. § 374 to declare that the place where a retired judge maintains an actual abode in which he lives shall be his official station for purposes of travel and subsistence expenses. *Id.*

In its original Motion for Summary Judgment, the Government contends that 28 U.S.C. § 374 does not deem Abbeville as Judge Putnam's "tax home." It argues that Judge Putnam's assignment to the courthouse in Lafayette was not temporary. *See, Peurifoy,* 358 U.S. at 60, 79 S.Ct. at 105. His employment could only be characterized

as indefinite. *See, Boone v. Commissioner,* 482 F.2d 417 (5th Cir.1973); *Norwood v. Commissioner,* 66 T.C. 467, 469–70 (1976). Since Judge Putnam did not change residence or office locations when he took senior status, the Government argues that Lafayette was his principal place of business, and, his "tax home," as well.

In its Reply brief, the Government contends that the plaintiffs fail to cite any authority that 28 U.S.C. §§ 374 and 456 which provide reimbursements for the deducted expenses automatically create a business deduction under I.R.C. § 162(a)(2). Congress, it also claims, has not expressed any intent that Judge Putnam's reimbursed expenses should not be taxed. For example, although it provides expense reimbursements for the President, Members of Congress, Judges and others [11], Congress found it necessary to enact specific legislation to provide that the "tax home" of Members would be in their home districts.[12] Since Congress has not enacted such legislation for the benefit of federal judges or others, the I.R.S., says the Government, may tax Judge Putnam's reimbursements.

It is true that Congress does not provide a statutory exception within I.R.C. § 162 which exempts taxation of Judge Putnam's reimbursements. However, assuming his expenses satisfy the three *Flowers* conditions for a business deduction, nothing in § 162 permits taxation of Judge Putnam's reimbursements either.

Since Judge Putnam maintains his actual abode in Abbeville, that is his "official station" under 28 U.S.C. § 374. Whether he worked mostly in Lafayette during the tax years in question does not alter this legal fact. To repeat, Abbeville is, and was, his "home." Under 28 U.S.C. § 456(a), Judge Putnam shall be paid all necessary traveling expenses and a per diem allowance in lieu of

---

**11.** *See* 3 U.S.C. § 103 (relating to travel expenses of President); 2 U.S.C. §§ 31 *et seq.* (relating to travel and subsistence expenses of Members of Congress); 28 U.S.C. § 456 (relating to travel and subsistence of justices and judges); and 5 U.S.C. § 5702 (relating to certain travel and subsistence expenses of governmental employees).

**12.** The last paragraph of I.R.C. § 162(a) provides "the place of residence of a Member of Congress ... within the State, congressional district, or possession which he represents in Congress shall be considered his home, but amounts expended by such Members within each taxable year for living expenses shall not be deductible for income tax purposes in excess of $3,000."

actual expenses of subsistence whenever he transacts business away from his official station, *i.e.,* his home in Abbeville. *See also,* Guide to Judicial Policies and Procedure, Vol. 3, Title 16 Section B(1)(f).

▮ The interaction of 28 U.S.C. § 374 and § 456 contemplate that when a retired judge no longer holds court, his "official station" follows his actual residence. Thus, although the retired judge may no longer work at this "official station," the statutes still treat it as if he does so as to allow for expense reimbursements if and when the judge is assigned for duty at a different "station."

While the Government seems to admit as much, it cannot relegate itself to the fact that the application of the sections should also render taxation of Judge Putnam's reimbursements nugatory. Such treatment would also allow plaintiffs to take any business deductions for travel expenses which are not fully reimbursed. In other words, the Government argues that Congress' desire to reimburse travel expenses under §§ 374 and 456 cannot reveal a desire not to tax the reimbursements.

This Court disagrees for at least two reasons. First, the taxation of a retired judge's reimbursements would diminish the very incentive Congress sought to achieve with the statutes. For any taxation of the travel reimbursements leaves the retired judge without a complete reimbursement of his expenses to which Congress clearly entitles him. Given the clear history of 28 U.S.C. § 374, this result cannot follow.

▮ Second, the policy underlying the reimbursement statutes heavily persuades this Court to conclude that Congress meant the term "abode" to have its ordinary meaning of "dwelling." Under 28 U.S.C. § 456(f),

the official station of a retired judge must be established in accordance with the dictates of 28 U.S.C. § 374. And that section equates a retired judge's actual "abode," or residence with his "official station." Under § 456(d), Congress deems a district judge's "official station" as the "place where a district court holds regular sessions at or *near which the judge performs a substantial portion of his judicial work* ..." (Emphasis added). Therefore, by defining a retired judge's "abode" as his "official station" for reimbursement purposes, Congress treats all other "official stations" away from a judge's "abode" as if they were temporary places of business entitling a judge to reimbursement.[13] Having reviewed § 456's provisions, this Court finds Congress clearly intended a judge's "official station" to be treated as his "principal place of business."[14]

It is true, of course, that Judge Putnam only drove twenty miles between Abbeville and Lafayette. It is also true that both towns are in the same federal district. Thus, according to the Government, Judge Putnam's travels between Abbeville and Lafayette "look, smell and taste" like commuting more than business travel "away from home." *See* Government's Reply Brief at 3.

▮ Congress, however, does not explicitly prohibit Judge Putnam's business deductions simply because Lafayette is in the same district as Abbeville. While the Government's arguments imply this may be an oversight of Congress, this Court cannot rewrite the statute without violating its constitutional obligations. Congress unequivocally recognized that it was unfair to expect a retired judge to travel away from his home without receiving reimbursement. It established the statutory reimbursement devices of 28 U.S.C. §§ 374 and 456 to provide direct relief, as well as incentive, to retired federal

---

13. In the absence of reimbursement, Congress also sought to allow a judge to take business deductions not in excess of any amount to which he would be entitled to reimbursement.

14. For example, § 456(b) designates the "official duty station" of the Chief Justice and the Justices of the Supreme Court as the District of Columbia, which is the "principal place of business" where the Supreme Court holds its sessions.

Section 456(e) also designates the "official duty station" of a circuit judge as "the place where a circuit or district court holds regular sessions at or *near which the judge performs a substantial portion of his judicial work,* or that place where the Director provides chambers to the judge *where he performs a substantial portion of his judicial work,* which is nearest the place where he maintains his actual abode in which he customarily lives." (Emphasis added).

judges. And the simple fact of the matter is that the statutes as written apply to Judge Putnam despite the fact that he only drove twenty miles to Lafayette. While there is some merit in the Government's argument that the traveling distance should resolve the "tax home" issue in its favor, Congress has simply not amended § 374 to disallow Abbeville as the Judge's home due to its close proximity to Lafayette. Given the plain meaning of § 374, it is not the province of this Court to rewrite the statute despite the apparent inconsistency in result urged by the Government. *See, U.S. v. M/V Big Sam,* 693 F.2d 451 (5th Cir.1982), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). Therefore, having examined the policies behind §§ 374 and 456, this Court finds Judge Putnam's "tax home" to be his official station in Abbeville.

■ Having considered the first two conditions necessary for a deduction under I.R.C. § 162(a)(2), the Court must finally consider whether Judge Putnam's expenses were "incurred in pursuit of business [as] necessary or appropriate to [his] business." Continuing along its same line of argument, the Government argues that regardless of the exact location of Judge Putnam's "tax home," his residence was approximately twenty miles from his principal location for conducting official court business.

While no law of the United States required Judge Putnam to remain in Abbeville upon his appointment, it bears repeating that §§ 374 and 456 explicitly contemplate that a retired judge *who does remain* at his home will receive reimbursement for ordinary expenses incurred at another station. Contrary to the Government's assertions, the statutes do not encourage the classification of the expenses here as inherently personal. If anything, the statutes demand quite the opposite result—*i.e.,* classification of Judge Putnam's expenditures as motivated by the exigencies of the business. *See, Flowers,* 326 U.S. at 474, 66 S.Ct. at 254. For example, if Judge Putnam actually *moved* to Lafayette after his designation, the dispute here would be moot. Under § 374, his "home" would be Lafayette, and the plaintiffs would satisfy none of the conditions necessary for taking a

business deduction. Requiring a retired judge to relocate to the assigned district again erodes any incentive for his accepting the appointment.

Given the legislative history behind 28 U.S.C. §§ 374 and 456, Congress sought to prevent such disincentives to retired federal judges who accepted assignments outside their "home" districts. Therefore, by declaring a retired judge's residence as his official station for purposes of reimbursement of travel expenses incurred while away from home, Congress recognized Judge Putnam's expenses here as "ordinary and necessary" business expenses related to the pursuit of his business in Lafayette.

■ The Government's final contention seeks to disallow Judge Putnam's deductions for the cost of his midday meals under the "sleep or rest" rule. The "sleep or rest" rule precludes business expense deductions for midday meals incurred on daily trips without an overnight stay. *See United States v. Correll,* 389 U.S. 299, 304, 88 S.Ct. 445, 448, 19 L.Ed.2d 537 (1967). The plaintiffs, however, maintain that the "sleep or rest" rule is used to determine whether or not there is a "real business necessity" for the expenses, and that the rule does not apply to meal expenses incurred for the sole benefit of the employer. *See, Moss v. Commissioner,* 758 F.2d 211, 213 (7th Cir.1985); I.R.C. § 274(k)(2)(B).

An examination of plaintiffs' tax filings reveals that the business deductions taken all arose as a result of Judge Putnam's business as a recalled retired federal judge. Had he not been recalled, he would not have eaten the meals in Lafayette. To repeat, then, plaintiffs' expenses satisfy the "ordinary and necessary" condition for business deductions required pursuant to I.R.C. § 162(a) and there is no need to apply the "sleep or rest" rule to the facts of this case.

This Court finds plaintiffs have satisfied the three conditions necessary for taking a business deduction under I.R.C. § 162(a)(2). Under the Treasury Regulations directed to individual taxpayers in general, if Judge Putnam is required and does account to his employer for employee business expenses, he need not report the reimbursements as in-

come if his actual expenses equal or exceed the reimbursements. *See* Treas.Reg. § 1.162(17)(b)(1), (2), (3) and (4). If, however, his reimbursements exceed his actual expenses, Judge Putnam must include the excess in his income. *Id.* Finally, if his actual expenses exceed the reimbursements and he desires to claim the excess expenses as a deduction, Judge Putnam must include the total reimbursements and expenses on his return claiming a net deduction for the excess expenses. *Id.*

For both tax years in issue, Judge Putnam's reimbursements from his employer never exceeded his actual expenses. His actual expenses exceeded his reimbursements. Consequently, to claim the excess expenses as a deduction, Judge Putnam must include his total reimbursements and expenses on his tax return claiming a net deduction for the excess. This he did.[15] And as far as the $1,392 for midday meals incurred for the taxable year of 1985, plaintiffs need not report these expenses or their corresponding reimbursements since the expenses and reimbursements for meals were in equal amounts.[16]

This Court finds that the Government may neither tax plaintiffs on the reimbursements Judge Putnam received for his traveling expenses for 1985 and 1986, nor disallow the traveling expenses for these two years as proper business deductions.

Under the provisions of Treas.Reg. 301.-6611–1(c)(2), the amount of any interest paid with respect to a deficiency is treated as an overpayment to the extent the deficiency was incorrect. The Court finds that plaintiffs' overpayment for 1985 is $3,928.04 ($2,787.00 in tax plus $1,147.04 in interest) and their overpayment for 1986 is $1,581.38 ($1,320.40 in tax plus $260.98 in interest).[17] The plaintiffs are entitled to a full refund of these amounts.

The Court also finds that under the provisions of I.R.C. § 6611, the plaintiffs are entitled to interest on their overpayments of $3,928.04 and $1,581.38, respectively. This interest is to be computed at the overpayment rate established by I.R.C. § 6621(a)(1) and calculated from the date of the overpayment to a date not more than thirty days prior to the date of the refund check. I.R.C. § 6611(b)(2) and Treas.Reg. § 301.6611–1(g).

Accordingly,

**IT IS THE ORDER OF THE COURT** that the motion of plaintiffs, Richard J. and Doretha G. Putnam, for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same is hereby, **GRANTED.**

**IT IS THE FURTHER ORDER OF THE COURT** that the motion of defendant, the United States of America, for summary judgment pursuant to Fed.R.Civ.P. 56 be, and the same is hereby, **DENIED.**

**IT IS THE FURTHER ORDER OF THE COURT** that there be judgment in favor of plaintiffs, Richard J. and Doretha G. Putnam, and against defendant, the United States of America, in the amount of $5,509.42 ($3,928.04 + $1,581.38), plus interest in accordance with I.R.C. § 6611, and costs.

**15.** *See* each "Form 2106" attached to Exhibits A, B, D, and E in the Record.

**16.** *See* Stipulations # 17, # 18, # 29 and # 30.

