**UNITED STATES of America,
Appellant,**

v.

**Elmire L. LE BLANC et al., Appellees.**

**No. 18053.**

United States Court of Appeals
Fifth Circuit.

May 17, 1960.

Morton K. Rothschild, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Lloyd Cyril Melancon, Asst. U. S. Atty., New Orleans, La., Robert N. Anderson, Atty., Dept. of Justice, Washington, D. C., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellant.

Amos L. Ponder, Jr., Edw. J. Boyle, Clem H. Sehrt, Ponder & Ponder, New Orleans, La., Aubert D. Talbot, Napoleonville, La., for appellees.

Before CAMERON, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Fifteen years ago the Supreme Court momentarily considered that it should, and would, determine whether "home" was really home, or whether it was the taxpayer's regular place of business employment insofar as income tax deductions for travel expense were concerned. Decision of that question in that case was avoided by placing decision on another ground. Commissioner of Internal Revenue v. Flowers, 1945, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203.[1] Thirteen

---

1. "The meaning of the word 'home' in § 23(a) (1) (A) with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation. 4 Merten's, Law of Federal Income Taxation (1942), § 25.82. The Tax Court and the administrative rulings have consistently defined it as the equivalent of the taxpayer's place of business. See Barnhill v. Commissioner of Internal Revenue, 148 F.2d 913, 159 A.L.R. 1210,

supra (C.C.A. 4th). On the other hand, the decision below and Wallace v. Commissioner of Internal Revenue, 144 F.2d 407 (C.C.A. 9th), have flatly rejected that view and have confined the term to the taxpayer's actual residence. See also Coburn v. Commissioner of Internal Revenue, 138 F.2d 763 (C.C.A. 2d).

"We deem it unnecessary here to enter into or to decide this conflict * *."

years later the Court again bypassed this and related questions when it affirmed the Court of Appeals on the factual issue of "temporary" or "indefinite-indeterminate" absence under the so-called "exception" to Flowers. Peurifoy v. Commissioner, 1958, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30.[2] Now perhaps the question so long and deliberately deferred by the Supreme Court is again sharply posed. It may be ironic that if that comes to pass, the conflict will again be between the Fourth Circuit and the Fifth Circuit. More unique, it may still be over Barnhill v. Commissioner, 4 Cir., 1945, 148 F.2d 913, 159 A.L.R. 1210, which was at odds with our original Flowers case, Flowers v. Commissioner, 5 Cir., 1945, 148 F.2d 163, and precipitated the grant of certiorari in that case. Claunch v. Commissioner, 5 Cir., 1959, 264 F.2d 309. For Barnhill involved Justices of the Supreme Court of North Carolina and held that travel expenses were not there deductible. Here we deal with Justices of the Supreme Court of Louisiana and our conclusion is that such expenses are deductible.

In reaching this conclusion, which we affirm, the District Court dealt with virtually undisputed facts.[3]

The Taxpayer was Justice Samuel LeBlanc, since deceased. The case concerns two tax years (1950 and 1951) during his tenure as Associate Justice from December 1949 down to the date of his retirement in December 1954. The precise question is whether he was entitled to deduct as traveling expenses while away from "home" under § 23(a) (1) (A) of the 1939 Code,[4] the rental of

---

Commissioner of Internal Revenue v. Flowers, 326 U.S. 465 at pages 471–472, 66 S.Ct. 250, at page 253, 90 L.Ed. 203, at page 208.

2. "We granted certiorari, 356 U.S. 956, 78 S.Ct. 996, 2 L.Ed.2d 1065, to consider certain questions as to the application of § 23(a) (1) (A) of the Internal Revenue Code of 1939 raised by the course of decisions in the lower courts since our decision in Commissioner v. Flowers * * *. However, as the case has been presented to us we have found it inappropriate to consider such questions." Peurifoy v. Commissioner, 358 U.S. 59, at pages 59–60, 79 S.Ct. 104, at page 105, 3 L.Ed.2d 30 at page 31.

The dissent was based on the Court's refusal to pass upon the construction of the statutory term "home." "The meaning of 'home' was expressly left undecided in Flowers but is squarely presented in the instant case. I disagree with the Commissioner's contention that 'home' is synonymous with the situs of the employer's business." Peurifoy v. Commissioner, 358 U.S. 59, at page 62, 79 S. Ct. 104, at page 106, 3 L.Ed.2d 30 at pages 32–33 (dissenting opinion).

3. Originally submitted on the Government's motion for summary judgment which the District Court denied, the Court, by express stipulation of the parties, then proceeded to resolve whatever conflicting inferences might be open on this record which was, in some respects, quite imposing. It included pretrial depositions of the taxpayer's widow, Mrs. LeBlanc, and a daughter, affidavits concerning some commercial trade accounts, and then a detailed affidavit of Chief Justice Fournet and Associate Justices Ponder, Hamiter, Hawthorne, McCaleb, Moise and Simon.

4. "§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:
"(a) [As amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798] Expenses.
"(1) Trade or business expenses.
"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *." 26 U.S.C.A. § 23(a) [1939 IRC].
Also pertinent is § 24.
"§ 24. Items not deductible
"(a) [As amended by Sec. 127(b), Revenue Act of 1942, supra] General rule. In computing net income no deduction shall in any case be allowed in respect of—
"(1) Personal, living, or family expenses, * * *."
26 U.S.C.A. § 24(a) [1939 IRC].
This is amplified in Treasury Regulation 111.
Section 29.23(a)–1. "Among the items included in business expenses are * * * traveling expenses while away from home

an apartment in New Orleans occupied by him and his wife during the time he was in attendance on the Supreme Court and therefore unable to continue living in his long established home at Napoleonville some distance away.

For our purposes, the facts may be severely compressed. Napoleonville is a small Louisiana community located in the Parish of Assumption approximately 75 miles from New Orleans. Samuel Le-Blanc was born there and it was there where nearly every significant event of his life occurred. In 1912 he was married to Mrs. LeBlanc who survives him and is a party to this cause. There they raised a family of four surviving children. Mr. LeBlanc,[5] engaged in the active practice of the law and there maintained an office and well equipped library. In addition to his professional practice, he owned considerable personal property and real estate, including his family home. He was financially interested and active in a plantation operation and had other local business interests. He was engaged actively in and identified as a member of his local church parish, civic organizations and social clubs. There he maintained his sole bank accounts, and all of his banking was done in Napoleonville. The family traded for some things with the small merchants of that community, but the LeBlanc family had long looked to mercantile and similar establishments located in New Orleans for their principal needs. He was thus, until 1949 at least, a lifelong actual resident and citizen and a qualified elector in the Parish of Assumption. In every respect, actual and legal, this was his home.

Came then 1949. Did Mister LeBlanc's home become something less for Judge LeBlanc? Certainly not in fact. He and his wife continued to maintain the family home in Napoleonville. It was kept open, was equipped with all facilities, and all utilities were kept connected. Except for unusual and infrequent circumstances, Judge and Mrs. LeBlanc left New Orleans and spent every week end during the court term at the residence in Napoleonville. During the summer months of July, August and September when the court was not in active session, life went on at Napoleonville exactly as it had before his accession to the bench.

Nor was there anything about the existence in New Orleans which made Napoleonville any less his home. True, the Judge and Mrs. LeBlanc lived in an apartment. But this was only occupied when the Judge had to be in New Orleans in attendance upon the court during its sessions. When court work requiring attendance in New Orleans was finished each week, back to Napoleonville they went. So, too, did they when court recessed during the summer months. The apartment served merely as a place for the Judge to stay as would a hotel.[6] And the meals prepared or eaten there were, to the Judge's good fortune, a happy substitute for that obtained by itinerant judges in public restaurants.

No question is, nor on this record may be raised, on the reasonableness of the expenditures. The Commissioner, to be sure, in determining reasonableness of the infinite variety of things now having a tax incidence, has an awesome review

---

solely in the pursuit of a trade or business. * * *."

Section 29.23(a)-2 " * * * If the trip is solely on business, the reasonable and necessary traveling expenses, including railroad fares, meals and lodging, are business expenses.

"(a) If, then, an individual, whose business requires him to travel * * * his traveling expenses [where unreimbursed] are deductible * * *.

* * *

"Commuters' fares are not considered as business expenses and are not deductible."

5. Mrs. LeBlanc, in her depositions, perhaps like some other judges' wives, apparently had some difficulty in thinking of him as Judge, for occasionally her references were to him as "Mister LeBlanc."

6. Indeed, in the fall session of his last term when Judge LeBlanc's retirement was imminent, he did not renew the lease on the apartment and stayed in one of New Orleans' large transient hotels.

in the most intimate phases of a taxpayer's business, personal and social life. But he would hardly say that a Justice had to stay in a hotel; that he could have one room, but not two. An apartment was, therefore, the only practicable alternative to hotel life.[7] And in New Orleans, this record affirms without contradiction that it was necessary to lease for a whole year to obtain an apartment for the nine-month court term.

The apartment was but a place to stay. It was, of course, a place where the Judge spent a lot of time.[8] And it may even have been a comfortable place to stay. But it was not home and nothing about it or their life in New Orleans compelled, or even permitted, the conclusion that this was home. The question is, then: did the tax law make it one? Or, in any event, were these expenditures sufficiently related to the business of judging[9] as to be deductible?

The Government's theory—which in a scatter gun approach finally contends that the expenses are not deductible without precisely defining the reasons—seems to be that since Judge LeBlanc's work required that he spend three-fourths of the year in New Orleans, this was where he really lived, the apartment was his home, and the maintenance of the dual residence at Napoleonville was one merely from his own personal choice unrelated to his business as a Judge. This latter was essentially the holding in Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203, and it has found colorful, but helpful, voice in handy apothegms which we and others have uttered or echoed. "The job, not the taxpayer's pattern of living, must require the travel." Carragan v. Commissioner, 2 Cir., 1952, 197 F.2d 246, 249. Traveling expenses which "arise from the taxpayer's choice not to bring his home close to his place of work" are not deductible. O'Toole v. Commissioner, 2 Cir., 1957, 243 F.2d 302, 303. The "Supreme Court has steadfastly refused to say that traveling expenses are incurred in the pursuit of business when they stem from the [taxpayer's] refusal to bring his home close to his job." Carragan v. Commissioner, 2 Cir., 197 F.2d 246, 249, quoted by us in Hammond v. Commissioner, 5 Cir., 1954, 213 F.2d 43, 44.

But the fact—and here we mean the Louisiana legal-fact—is that Judge LeBlanc had no choice about Napoleonville. He was required to maintain a home there. Neither did he have any choice about New Orleans. Louisiana did not compel him to live there, but he was commanded to work there. The Commissioner does not, nor could he, contend that

---

7. Their young daughter then in high school years at a parochial convent located in New Orleans spent a few week ends with her parents when they remained in New Orleans. She also stayed part of the time in the month of June between the date the convent closed and the court term ended. But this was incidental to her parents being there. The apartment was not provided to supply her a place to stay. As hopeful parents enthused by momentary display of likely talent, they did purchase a small piano for the apartment which they thought the daughter could profitably use during her occasional visits. The piano was little played, the daughter's musical interests soon waned, and the piano was shortly sent to Napoleonville there presumably to become part of the nationwide mass of violins, cornets, trombones, drums and assorted instruments once procured for nascent prodigies.

8. Under Article 7, § 14 of the Louisiana Constitution, LSA, it is mandatory for the Supreme Court to hold an annual session in the City of New Orleans beginning not later than the first Monday in the month of October and ending not sooner than the 30th day of June. Reconstructed with adjustments required from overlapping court terms and tax calendar years, the Supreme Court heard cases on 74 days in 1950 and 78 days in 1951. The court's practice was to hear oral arguments for two weeks, followed by a three-week period in which the Justices were occupied with conferences, discussions, and the writing of opinions.

9. The 1939 Code defines trade or business: "(d) Trade or business. The term 'trade or business' includes the performance of the functions of a public office." 26 U.S.C.A. § 48 (1952 ed).

the Judge was compelled to make the round trip by private automobile each court day to and from Napoleonville and New Orleans so as to make him a commuter.[10] If, as we have stated, he was required to live in Napoleonville and work in New Orleans, it was most certainly "the exigencies of business," Peurifoy v. Commissioner, supra, 358 U.S. 59, at page 60, 79 S.Ct. 104 at page 105, which brought it about. That being so, mileage, travel, carrier fares, board and lodging during the absence were deductible.

What did Louisiana require of its Supreme Court Justices? First, it required that "the Supreme Court shall be composed of the Chief Justice and six Associate Justices." Art. 7, § 4. As to the Justices, the Constitution imposes a two-year residential requirement within the district immediately prior to election.[11] And, of decisive importance, it requires that the Supreme Court, made up of Justices geographically qualified and elected from districts, "shall always be composed of Justices from said Districts." [12] That this reflects the settled and historically wrought-out public policy of Louisiana to have a supreme tribunal representative of its heterogeneous people [13] is made clear by the constitutional provision which automatically vacates the office where the holder thereof changes "his residence * * * from the district * * * in which he holds such office." [14]

The Government cannot escape the geographical residential requirement of residence within the district for eligibility

10. See Treasury Regulation 111, Sec. 29.-23(a)–2 "* * * Commuters' fares are not considered as business expenses and are not deductible."

11. Article 7, § 6.
"* * * The justices of the Supreme Court shall * * * have resided within the territory of the district from which elected, for the two years immediately preceding. They shall be elected for terms of fourteen years * * *."

12. "The State shall be divided into six Supreme Court Districts, and the Supreme Court, except as otherwise provided in this Constitution, shall always be composed of Justices from said Districts. * * *."

13. The District Judge, trained and experienced as a Louisiana lawyer, in his conclusions of law epitomized this history and its lessons to Louisiana in this way.
"Initially, Article 79 of 1864 provided for the appointment of the justices by the Governor and the Constitution of 1868, Articles 75 and 76, again provided for appointment by the Governor without regard for districts. In 1879, the Constitution, Articles 82, 83 and 84, for the first time, provided for appointment from districts. The Louisiana Constitution of 1898 in Articles 86, 87 and 84, of 1913 in Articles 86, 87 and 88, and the present Constitution of 1921, as amended, provide for the election of Justices to the State Supreme Court from various districts.
"The State of Louisiana has been under various flags of different countries, is composed of citizens of different foreign extractions and the industries vary from the north to the south and the east to the western part of Louisiana. The framers of its Constitution, wisely, provided for representation on its Supreme Court from districts in order that the spirit and feeling of the law and the bar be made up from different portions of the State.
"(6) The Louisiana Constitution not only requires that the various justices of the Supreme Court of Louisiana reside in their respective districts for two years prior to their election to be qualified, but their residence in their respective districts is a tenure requirement and if they move their residence from said district they vacate the office they hold. Article 8, Section 13 of the Constitution of Louisiana has been construed to hold that an elected official vacates his office when he moves from the district from which elected. State ex rel. Boone v. Ammons [La.App.,] 47 So.2d 370; Op. Attny.Gen. 1948–50 p. 498; 1938–40 p. 831; 1924–26 p. 408; 1936–38 p. 240; 1940–42 p. 2414; 1944–46 p. 988; and 1938–40, p. 778."

14. Art. 8, § 13.
"* * * And whenever any officer, State, district, parochial, municipal or ward, may change his residence from this State, or from the district, parish, municipality or ward, in which he holds such office, the same shall thereby be vacated, any declaration of retention of domicile to the contrary notwithstanding * * *."

and election. It concedes—as it must—that up to the moment of election, actual residence in Napoleonville [15] was indispensable to Mr. LeBlanc's accession to the Supreme Court of Louisiana. As a matter of geography and Louisiana constitutional law, it must also concede that living—residing—in the City of New Orleans, located in Orleans Parish, he could not have been elected to this position. But it then makes the surprising argument that continued actual residence within a district is not essential to the continued tenure of a justice elected for a 14-year term. Nothing in the Louisiana Constitution supports any such artificial view [16] and considered authority in analogous fields [17] as well as Louisiana

legal opinion of the highest kind [18] compels the conclusion that tenure depends on continued bona fide actual residence.

Once continued actual residence in Napoleonville is recognized as indispensable to carrying on the business of Justice of the Supreme Court from the Sixth District, we encounter no difficulty at all about the place of work. The same Louisiana Constitution is equally emphatic in its requirement that the Court be in annual session from October through June in the City of New Orleans.[19] There the Court, with its Clerk and all of its records, is maintained. The State provides suitable courtroom, chambers for the Justices, the court officers, clerical staff, and all other needs. There

15. Of course, he could have lived any place within the Sixth District made up of the Parishes of St. Martin, St. Mary, Iberia, Terrebonne, Lafourche, Assumption, St. John The Baptist, St. James, St. Charles and Vermilion. See Art. 7, § 9 of the Constitution.

16. The Government stresses Art. 8, § 11. But this, in contrast to the provision for the automatic vacating of the office under Art. 8, § 13, note 14, supra, relates to voting only.

"For the purpose of *voting*, no person shall be deemed to have gained a residence, by reason of his presence, or to have lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States * * *." Art. 8, § 11. (emphasis supplied)

More important, the Constitution speaks of the Supreme Court as a continuing body which *is* always to be made up of Justices from the Districts, see note 12, supra.

17. The District Court in its conclusions of law pointed out: "Article 8, Section 13 of the Constitution of Louisiana has been construed to hold that an elected official vacates his office when he moves from the district from which elected. State ex rel. Boone v. Ammons [La. App.], 47 So.2d 370; Op.Atty.Gen. 1948–50 p. 498; 1938–40 p. 831; 1924–26 p. 408; 1936–38 p. 240; 1940–42 p. 2414; 1944–46 p. 988; and 1938–40, p. 778."

18. The detailed affidavit of the Chief Justice and all of the associate Justices of the Supreme Court of Louisiana makes these unqualified statements. A "change of residence from the Supreme Court District in and for which a Justice was elected would vacate his office."

"These provisions of the Constitution contemplate and require more than a mere legal domicile.

"Continued residence of a Justice * * * within the District from which he was elected, does not, and is not, a matter of personal desire, choice or convenience. * * *

"The provisions of the Constitution of Louisiana with reference to the residence of the Justices within the Districts from which they are elected are both qualification and tenure requirements."

The Government, in the stipulation concerning the record to be used by the District Court in reaching its opinion, reserved an objection that such statements would be inadmissible as opinions, legal conclusions and interpretations of the law. Our reference to them is not as "facts" proved, but as opinion frankly stated.

The inescapable self-interest does not disqualify the opinions any more than would like interest disqualify members of the federal judiciary passing upon the impact of federal income taxes as a diminution of compensation prohibited by the Constitution. See O'Malley v. Woodrough, 1939, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289. Where else would one turn for legal opinions of such prestige—Attorney General, law professors, text writers, student editors? Service on the Supreme Court of a state is often regarded as significant. See, General Box Co. v. United States, 1956, 351 U.S. 159, 168–172, 76 S.Ct. 728, 100 L.Ed. 1055. 1063–1065. (dissenting opinion).

19. Art. 7, § 14.

alone are arguments heard. And save for such work as the Judge wants to take to his home station—or more accurately cannot avoid taking—there is where the agony of decision brings forth its immutable memorial for the books.

Judge LeBlanc must have loved Napoleonville. Like Flowers—also called by the venerable title Judge—he might never have been willing to give up all that it held so dear to him and his family. But what he did not want to give up, Louisiana forbade him to abandon so long as he remained her faithful Justice. His office tied him to Napoleonville and to New Orleans. So long as he filled the office he was committed to both places. His office required that he make his home in Napoleonville and do his work in New Orleans. He could not do either without maintaining a home in the one and traveling to the other. All of this flowed directly from his "business," the high calling of a Justice.

That makes it precisely within Flowers since it is there held that "the exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." 326 U.S. 465, at page 474, 66 S.Ct. 250, 254, 90 L.Ed. 203, at page 209. In this light both Emmert v. United States, D.C. S.D.Ind.1955, 146 F.Supp. 322, and Moss v. United States, D.C.W.D.S.C.1956, 145 F.Supp. 10, are entirely consistent with Flowers. Similarly, although the result we reach—allowing deductibility—is contrary to Barnhill, supra, the reasoning is not since in Barnhill whether the North Carolina justice kept his *old* home place was purely personal as a matter of tradition, not a constitutional obligation. Barnhill v. Commissioner, supra, 148 F. 2d 913.

Affirmed.

JONES, Circuit Judge (dissenting).

The question usually presented in cases such as this is whether the statutory home of the taxpayer was where he lived or where he worked. Notwithstanding all that has been written for the majority, I cannot escape the conclusion that

Judge LeBlanc both lived and worked in New Orleans. I am of the opinion that the majority has commenced another spin of the wheel by departing from the doctrine set forth in Claunch v. Commissioner, 5 Cir., 1959, 264 F.2d 309. This case, I think, should be followed both upon precept and principle. I dissent.