# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-IA-01214-SCT

*PUBLIC EMPLOYEES RETIREMENT SYSTEM OF MISSISSIPPI (PERS)*

*v.*

*ARMIS E. HAWKINS*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/1997 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF CHICKASAW COUNTY |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  T. HUNT COLE , JR. AND P. ROGER GOOGE, JR. |
| ATTORNEY FOR APPELLEE: | LESTER F. SUMNERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART, RENDERED IN PART, AND REMANDED - 04/04/2001 |
| MOTION FOR REHEARING FILED: | 02/21/01 |
| MANDATE ISSUED: | 4/11/2001 |

### PER CURIAM.

¶1. PERS' motion for rehearing is denied. The prior opinion is withdrawn, and this opinion is substituted in its place.

¶2. Due to the recusal of all Supreme Court Justices, the parties agreed to the appointment of a panel of five Special Justices pursuant to Article 6, Section 165 of the Mississippi Constitution. The parties further agreed that the panel would consist of Charles Clark, Bill Allain, Frank Montague, Jr., Guthrie Abbott, and Claude F. Clayton, Jr., Special Justices, and that they would submit their case to this panel of the Mississippi Supreme Court.[(1)] This panel of Special Justices constitutes a quorum of the Court and has full jurisdiction and authority pursuant to Article 6, Section 145B and Section 165 of the Mississippi Constitution to decide all issues raised by the filing of the Petition for Interlocutory Appeal by Public Employees Retirement System of Mississippi (PERS). *Carter v. State*, No. 97-CT-01468 (Miss. Jan. 25, 2001)(Unpublished Order).

¶3. The jurisdiction of this panel is derived from two sources. First, from the filing of the Petition for Interlocutory Appeal by PERS, pursuant to M.R.A.P. 5. As the Comment to Rule 5 makes clear, when interlocutory review is granted, the Mississippi Supreme Court is vested with the "flexible authority" to review situations in which the pertinent interest is "the administration of justice." The Court having granted

the Petition, the appeal proceeds as if it were from a final judgment. L.T. Munford, *Mississippi Appellate Practice* § 4.6 (1997). Second, the underlying action is within the original subject matter jurisdiction of the Circuit Court of Chickasaw County pursuant to Article 6, Section 156 of the Mississippi Constitution.[2] The Petition for Interlocutory Appeal is within the appellate jurisdiction of the Supreme Court under Article 6, Section 146 Mississippi Constitution and Miss. Code Ann. § 9-3-9 (Supp. 2000).

¶4. This Court is not limited to only the issues stated in the Petition for Interlocutory Appeal. Rather, this Court's appellate jurisdiction extends to the full scope of the interests of justice, as it does in any properly appealed matter. This is not a novel concept. In *McDaniel v. Ritter*, 556 So. 2d 303 (Miss. 1989), this Court specifically addressed the issue of whether its appellate jurisdiction was limited only to those issues presented in the petition for interlocutory review. In resolving the issue, the *McDaniel* Court held that:

> Our appellate jurisdiction extends to cases and not just issues. While we normally limit our review to specific issues presented by the parties, that limitation is one of expedition and not jurisdiction, else how our familiar plain error rule. Rule 28(a)(3), Miss.Sup.Ct.Rules; and Rule 103(d) Miss.R.Ev. Interlocutory appeals are no different. In the matter now before the Court, we will decide the issue raised by the Petition for Interlocutory Appeal and reach the merits of the case.
>
> . . .
>
> Moreover, once a case becomes subject to our appellate jurisdiction, we have authority to address all matters as may appear in the interests of justice and economy.
>
> . . .
>
> The parties have completed an expensive and time consuming trial and face another. Difficult issues have been sharply contested. Appellate consideration of those issues at this time likely will "materially advance the termination of the litigation and avoid exceptional expense to the parties." Rule 5(a)(1), Miss.Sup.Ct.Rules. We have exercised our discretion, granted the interlocutory appeal, and now consider and decide the issues discussed below.

*Id.* at 306-07. The logic of providing a definitive answer on the ultimate issue of law in this case is compelling. The ultimate legal issue has been thoroughly addressed by the parties. There is no need for further development of any facts in the trial court to definitively decide the issues of law addressed in this opinion. The resolution of this dispute at this time is the most efficient, least costly and fairest disposition of this unusual case. Any other approach would be a waste of judicial resources and would serve no beneficial purpose.

¶5. Also, there is support for this Court's position in federal practice. In discussing interlocutory appeals from an order granting or denying an injunction, a leading treatise states that although appellate review is usually confined to the issues necessary to determine the propriety of the interlocutory order itself:

> In addition, the scope of review may extend further to allow disposition of all matters appropriately raised by the record, perhaps leading to final disposition of the case. Jurisdiction of the interlocutory appeal is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the court of appeals without further trial court development. Any other rule would require wasted litigation without offsetting advantage in economy of appellate effort

or uninterrupted trial court proceedings.

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction & Related Matters 2d* § 3921.1, at 28-30 (1996)(footnotes omitted).

¶6. The threshold issue raised in the instant interlocutory appeal is whether Miss. Code Ann. § 25-11-120 (1999), requiring a final administrative review of an aggrieved individual's retirement benefit claim by the Public Employees' Retirement System Board of Trustees is the exclusive remedy for an individual to seek redress against PERS. For reasons more fully discussed herein, we affirm the decision of the Circuit Court of Chickasaw County denying PERS' Motion to Dismiss.

¶7. The dispositive questions are ones of law. The material facts are undisputed. In fact, it is on this basis that PERS filed a Motion for Summary Judgment in the Circuit Court of Chickasaw County. The merits of this action involve only the interpretation of statutes and regulations. Both parties fully briefed the merits in the Circuit Court and that briefing is part of the record on appeal. This Court reviewed and carefully considered all of the issues raised by both the motion for summary judgment and the motion for rehearing filed in response to our prior Opinion. In examining the entire trial court record, we gave particular consideration to the lengthy Memorandum in Support of the Motion for Summary Judgment filed by PERS. Given these considerations and because the facts and circumstances present here are unique, this Court finds that the interests of justice make it appropriate that we reach and decide the merits of the underlying issue. *See **Grand Casino Tunica v. Shindler***, 772 So. 2d 1036 (Miss. 2000).

I.

¶8. In 1983, the Mississippi Supreme Court began reimbursing its Justices from jurisdictions outside of Hinds County, for meals, lodging, utilities and travel expenses incurred ("subject reimbursements"). Initially, in preparing their income tax returns, the Justices excluded the subject reimbursements as nontaxable income. In 1991, the Internal Revenue Service determined that the subject reimbursements were non-deductible travel expenses and therefore were taxable income. However, relying on *United States v. Le Blanc*, 278 F.2d 571 (5th Cir. 1960), the Justices continued to exclude the subject reimbursements as nontaxable income.

¶9. On June 11, 1993, Margaret Baggett, the director of finance and administration for the Mississippi Supreme Court, wrote PERS, inquiring as to what extent the subject reimbursements would be eligible for retirement contributions in the event they were treated as taxable income. On July 9, 1993, Milton Walker ("Walker"), Executive Director for PERS, replied that the PERS statutes did not authorize contributions on travel expenses. In his response Walker cited Miss. Code Ann. § 25-11-103(k), as amended, which provides that earned compensation includes any maintenance furnished. Walker also cited a 1984 Attorney General's Opinion which concluded that reimbursements of travel expenses of state employees, as authorized by Miss. Code Ann. § 25-3-41, were applicable to Justices of the Mississippi Supreme Court. Walker stated in his response that the reimbursement of travel expenses was not the same as authorized maintenance.

¶10. On October 4, 1993, Stephen J. Kirchmayr ("Kirchmayr"), Court Administrator for the Supreme Court, wrote Walker asking him to reevaluate his position. Kirchmayr pointed out that the IRS considered the subject reimbursements to be taxable income. Kirchmayr also pointed out that pursuant to a 1991 *Informational Release* from PERS, reimbursements for taxable meal expenses would be subject to state

income tax, FICA, and PERS withholdings.

¶11. On November 17, 1993, Walker once again responded that PERS was unable to find statutory authority to include reimbursements for travel expenses in the computation of earned compensation for retirement purposes. This time Walker supported his position by asserting that pursuant to Miss. Code Ann. §§ 25-3-35, 25-3-37, and Article 6, Section 166 of the Mississippi Constitution, the Justices' salaries were statutorily fixed as full and complete compensation which could neither be increased nor decreased. Additionally, a PERS *Informational Release* dated May 1994, provided that taxable meal reimbursements would no longer be considered earned compensation, effective July 1, 1994.

¶12. On February 3, 1995, Carolyn Briscoe, Finance Director for the Mississippi Supreme Court, submitted to PERS, on behalf of Justices Armis E. Hawkins, Edwin Lloyd Pittman, and James L. Roberts, Jr., personal checks covering the employees' portion of the retirement payments for the subject reimbursements during the months of July 1994 through December 1994. The Court also paid the employer's portion of the contributions on behalf of the justices. The Justices' personal checks were never cashed. Instead, PERS held them for safekeeping. PERS returned the checks to the Justices after the action by Hawkins was commenced. After this controversy arose, the parties entered into a Deposit Agreement to hold employer and employee contributions that were due prior to Hawkins' retirement, subject to this Court's decision.

¶13. Subsequently, on February 10, 1995, PERS requested an official opinion from the Attorney General as to the following questions:

> 1. Whether amounts paid to justices of the Supreme Court for reimbursements of meals, lodging and mileage are includable in "earned compensation" for retirement purposes as set forth in Section 25-11-103(k).

> 2. If the answer is in the affirmative, must such reimbursement amounts be reported for retirement purposes for all of the justices?

¶14. On June 30, 1995, while this opinion request was still pending, Walker retired, and Charles Rubisoff ("Rubisoff") became the Interim Executive Director for PERS. Rubisoff withdrew the request for an official opinion on January 8, 1996, without receiving a response from the Attorney General.

¶15. On August 31, 1995, Justice Chuck McRae, by copy of his letter to the State Tax Commission, informed the PERS Board that the Justices were being taxed on the travel expenses, by both the Federal and the State governments. In his letter Justice McRae also requested that the PERS Board review why the subject reimbursements were not considered as income for retirement purposes. The PERS Board never responded to Justice McRae's letter.

¶16. On November 3, 1995, Rubisoff requested that Justice Hawkins' PERS account be tested to determine the maximum benefit permissible under Internal Revenue Code § 415. In this letter Rubisoff stated that there were special circumstances to consider with regard to Justice Hawkins' account, namely, a "currently [] unresolved issue as to whether his PERS benefit will be calculated ... using additional amounts paid for taxable meals and other expenses." The test results indicated that Justice Hawkins' estimated benefit payable would not exceed the maximum permissible under IRC § 415, even if contributions on the subject reimbursements were included in the calculation.

¶17. On November 22, 1995, then Chief Justice Hawkins wrote Rubisoff, advising that he expected his retirement benefits to include the subject reimbursements on which he had been taxed. Chief Justice Hawkins did not receive a response to his letter. Rubisoff did not notify Chief Justice Hawkins that a decision had been made to exclude the amounts. Hawkins retired on November 30, 1995. Hawkins' checks did not include the subject reimbursements as a basis.

¶18. In March of 1996, Frank Ready ("Ready") became the executive director of PERS. Ready knew of the checks submitted by the Justices and continued to hold them in safekeeping.

¶19. On January 30, 1997, several legislators wrote Ready informing him that it was the intent of the Legislature that any payment to the employee which qualified as "wages" under the Social Security Act also qualified for retirement benefits. As a result, on February 7, 1997, Ready, on behalf of PERS, made the second request for an official opinion from the Attorney General regarding the issue. Upon learning of this second request for an official opinion, Hawkins wrote Ready requesting that a copy of the request be sent to Hawkins and to Kirchmayr. Ready sent a copy of the portion of the request detailing the background information regarding Hawkins' account, but omitted the questions on which PERS sought an official opinion. Ready testified in his deposition that the Attorney General's opinion was necessary to the resolution of the matter. However, claiming attorney-client privilege, Rubisoff, Ready, and other agents of PERS refused to reveal the substance of communications between PERS and the Attorney General regarding the issue.

¶20. Hawkins replied on April 8, 1997, asking for a copy of the request for an official opinion, in its entirety. In an April 9, 1997 addendum, Hawkins asked that PERS acknowledge that PERS had made no final decision regarding his retirement benefits. In response on April 14, 1997, Ready wrote, inviting Hawkins to submit additional argument in writing or in person.

¶21. Hawkins filed his complaint for declaratory judgment against PERS on April 29, 1997. The action was filed in Chickasaw County Circuit Court, seeking, among other relief, a declaration that the subject reimbursements were within the Miss. Code Ann. § 25-11-103(k)'s definition of earned compensation and that he was entitled to pension benefits on the subject reimbursements.

¶22. On May 5, 1997, Ready sent letters to Justices Hawkins, Pittman, and Roberts returning the personal checks sent as retirement contributions on the subject reimbursements during the months of July through December 1994. In his letter Ready stated that as a result of legislative requests, he had cause to revisit PERS' position taken in 1993 and that:

> It is PERS's final administrative determination that under PERS law travel expense reimbursement paid to Supreme Court Justices does not constitute "earned compensation" nor "maintenance" for retirement benefit purposes.

Ready also sent a letter to Kirchmayr stating the above "final administrative determination" and returned checks totaling $21,402.13 representing employee and employer contributions received by PERS on behalf of Justices Hawkins, Pittman, and Roberts.

¶23. Justice McRae was similarly notified of PERS' "final administrative determination." Upon receipt of the letter Justice McRae wrote to Ready inquiring as to whether the decision was one made by the Board or "just simply" Ready. Justice McRae also inquired as to why he had not received a response to his request

that the matter be brought on for hearing before the Board. Ready responded that the determination was made by him alone, acting as the Executive Director for the Board. Ready also stated that the administrative determination could be appealed to the Board of Trustees in accordance with Regulation 42, just as the 1993 decision could have been appealed.

¶24. On June 13, 1997, PERS filed a motion to dismiss this action on the grounds that Hawkins had failed to exhaust administrative remedies available to him as required by Miss. Code Ann. § 25-11-120, or alternatively, that venue was improper in the Circuit Court of the First Judicial District Chickasaw County and should be transferred to the Circuit Court of the First Judicial District of Hinds County. The trial court denied both motions.

¶25. The trial court found that Hawkins was not required to engage in further exhaustion of administrative remedies. The court reasoned that PERS was unequivocally committed to its position. It found that PERS failed to act within a reasonable time by keeping the matter pending since 1992, and by failing to make a final administrative decision until after suit was filed. The trial court further stated that because the relationship between the parties was one of a contractual nature the State was not entitled to sovereign immunity and that venue was proper where the cause of action occurred or accrued as determined by Miss. Code Ann. § 11-11-3 (Supp. 1999). The trial court also held that because Hawkins expected his benefits to be paid in Chickasaw County, a breach, if any, occurred in Chickasaw County, thereby making Chickasaw County an appropriate forum.

¶26. Aggrieved, PERS filed a Petition for Interlocutory Appeal which this Court granted. The proceedings below have been stayed pending the outcome of the interlocutory appeal.

¶27. On October 28, 1999, this Court rendered an Opinion on the appeal. On November 12, 1999, PERS filed a Motion for Rehearing. On October 19, 2000, upon reconsideration of their participation in the case, a majority of the Court recused themselves and withdrew the October 28, 1999 Opinion. On December 4, 2000, an order was entered appointing this panel of five Special Justices. By separate orders all remaining Justices of the Court recused themselves from this action.

¶28. On February 7, 2001, this Court handed down its Opinion. On February 21, 2001, PERS filed a Motion for Rehearing. We deny the Motion for Rehearing, but withdraw our original opinion, and substitute this one in its place.

II.

A.

¶29. Generally, a party is required to exhaust available administrative remedies before seeking judicial review. *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 176 (Miss. 1999). Miss. Code Ann. § 25-11-120 (1999), provides that individuals aggrieved by a PERS administrative determination may appeal the determination to the PERS Board before seeking judicial review. [3]

¶30. The PERS Board has also adopted Regulation 42, which sets out the procedures for appeal.[4]

B.

¶31. The exhaustion doctrine is not without its exceptions. *Mississippi Dep't of Envtl. Quality v.*

*Weems*, 653 So. 2d 266 (Miss. 1995), sets out the factors which should be considered in determining whether to apply the exhaustion doctrine. Those factors which weigh against applying the doctrine of exhaustion include: the pursuit of the administrative remedy would result in irreparable harm; the agency clearly lacks jurisdiction; the agency's position is clearly illegal; the dispositive question is one of law; exhaustion would be futile; and comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena. *Id.* at 278.

¶32. PERS argues that where the administrative remedy is provided by statute, only two exceptions to exhaustion are recognized by Mississippi courts: (1) where the statute providing review is itself unconstitutional, and (2) where the statutory remedy provided would clearly be "of no avail" to the plaintiff. This is incorrect. This Court has noted a number of exceptions to statutorily required exhaustion, not only in *Weems*, but also in *Campbell Sixty-Six Exp., Inc. v. J. & G. Exp., Inc.*, 244 Miss. 427, 440, 141 So. 2d 720, 726 (1962). In *Campbell*, exhaustion was excused because: (1) no adequate administrative remedy was provided; (2) there was reasonable doubt as to the availability and adequacy of the administrative remedy; and (3) the question in dispute was purely legal, the interpretation of which did not require the agency's expertise.

¶33. Here, there is no irreparable harm.[5] The agency's position is not illegal. However, the dispositive question here is one of law and does not require resolution of factual disputes or the exercise of agency expertise. The fact that the dispositive question is one of law, does not alone warrant excusing exhaustion of administrative remedies, but it is a factor to be considered. *See Weems*, 653 So. 2d at 278; *Campbell Sixty-Six Exp., Inc.*, , 244 Miss. at 440, 141 So. 2d at 726. Another factor to be considered is that the legal issues in this case will be resolved with less expense, and more efficiently and expeditiously within the judicial system. The record discloses that the history of PERS' administration in this dispute has been to hold it under consideration rather than resolving it.

¶34. The Court determines that a strict application of the doctrine of exhaustion of administrative remedies is inappropriate in this matter. The threshold issue in this action is whether Miss. Code Ann. § 25-11-103(k)'s definition of earned compensation, includes reimbursements for meals, lodging, utilities and travel expenses. The facts in this action are uncontradicted. There is no further need for factual development. Also, in defining earned compensation, PERS looked to Miss. Code Ann. §§ 25-3-35, 25-3-37, 25-3-41 (1999) and Article 6, Section 166 of the Mississippi Constitution. Neither the statutes, nor the Mississippi Constitution is administered by PERS. The interpretation of these statutes and the Constitution present a question of law peculiarly within judicial competence. The resolution of this question does not require the expertise of PERS. No administrative process is being impaired. Judicial intervention will inevitably be invoked. Furthermore, there were ample opportunities for PERS to make a decision regarding Hawkins' claim before Hawkins filed suit, but PERS delayed until it was faced with a lawsuit.

¶35. This Court has held that administrative remedies which provide plain, speedy adequate and complete relief must be exhausted. *Hood v. Mississippi Dep't of Wildlife Conservation*, 571 So. 2d 263, 268 (Miss. 1990). However, this Court has previously decided that a claimant was not afforded a plain, speedy, adequate and complete remedy where the matter had been pending for three years or more. *Weems*, 653 So. 2d at 276. In today's case, the matter has been pending since 1993. At least four years passed before this action was filed in the circuit court in 1997. Under the Court's holding in *Weems*, Hawkins did not have an adequate and complete administrative remedy because he could not get a "final administrative decision," which is a condition precedent to the right to appeal to the Board of Trustees under Regulation 42. Without

a "final administrative decision," Hawkins had no right to appeal under Regulation 42, and had no other administrative remedy available to him. Accordingly, no further exhaustion of remedies was required in this action.

III.

¶36. The legal question which lies at the base of the case is whether Miss. Code Ann. § 25-11-103(k)'s "earned compensation" includes the reimbursements for meals, lodging, utilities and mileage paid by the State to a Supreme Court Justice in Hawkins' situation.[6] Section 25-11-103(k) expressly includes "maintenance" within earned compensation when it is "regular periodic compensation." The express exclusions are "litigation fees, bond fees, and other similar extraordinary non-recurring payments." This language precisely fits the types of compensation at issue in this case. The subject reimbursements were made in accordance with the law then in effect, in the regular course and scope of the Justice's work, rather than for extraordinary or unusual situations outside of the Justice's regular course and scope of work. The subject reimbursements were made for expense items that would commonly be considered maintenance reimbursements. Accordingly, the Court finds that the amounts which the State paid to Hawkins for reimbursements of meals, lodging, utilities and mileage, during his tenure as a Supreme Court Justice, are included in the definition of "earned compensation" for retirement purposes as set forth in Section 25-11-103(k), and shall be considered by PERS in calculating required retirement contributions, determining retirement benefits, and for all other purposes under the retirement program.[7] This ruling is retroactive. The contributions deposited by Hawkins and the Court pursuant to the Deposit Agreement, covering reimbursements of expenses incurred in traveling between his home and Jackson, Mississippi, apartment rent and utilities, and meals in Jackson are "earned compensation" under Miss. Code Ann. § 25-11-103(k) .[8] Neither the contributions to be made into Hawkins' PERS account under the Deposit Agreement, nor the payment of benefits from his retirement account will require the appropriation of funds by the State of Mississippi.

CONCLUSION

¶37. We find that the doctrine of exhaustion of administrative remedies does not bar this action. To this extent, the order below denying PERS' motion to dismiss is affirmed. The amounts paid to Hawkins for reimbursements of meals, lodging, utilities and mileage are included in the definition of "earned compensation" for retirement purposes as set forth in Section 25-11-103(k), and shall be reported and considered for retirement purposes.

¶38. The Order appealed from is affirmed as to exhaustion of administrative remedies. Within thirty (30) days after the issuance of the mandate in this case, the parties shall attempt to agree on the resolution of their dispute in accordance with this Opinion, and report the results of their efforts in writing to the Clerk of the Circuit Court of the First Judicial District of Chickasaw County. This case is remanded to the Circuit Court of the First Judicial District of Chickasaw County, where it is now pending, for further proceedings consistent with this Opinion to conclude the case in that court.

¶39. **AFFIRMED IN PART, RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

> **CHARLES CLARK, BILL ALLAIN, FRANK MONTAGUE, JR., GUTHRIE ABBOTT, AND CLAUDE F. CLAYTON, JR., SPECIAL JUSTICES, CONCUR.**

1. These Justices were appointed by Order of this Court and have taken the oath of office.

2. As explained *infra*, the unique facts of this case constitute a rare exception to the exhaustion of administrative remedies provided in Miss. Code Ann. § 25-11-120 (1999). Plaintiff chose to file this breach of contract action in the Circuit Court of Chickasaw County, First Judicial District. Venue is proper under Miss. Code Ann. § 11-11-3 because a substantial portion of the events constituting the claim occurred or accrued in Chickasaw County.

3. Miss. Code Ann. § 25-11-120 (1999), reads in pertinent part as follows:

> § 25-11-120. Hearings and appeals for persons aggrieved by administrative determination relating to eligibility, payment of benefits or calculation of creditable service.
>
> (1) Any individual aggrieved by an administrative determination, including a determination of the medical board, relating to the eligibility for or payment of benefits, or the calculation of creditable service or other similar matters relating to the Public Employees' Retirement System or any other retirement system or program administered by the board, may request a hearing before a hearing officer designated by the board. Such hearings shall be conducted in accordance with rules and regulations adopted by the board and formal rules of evidence shall not apply. The hearing officer is authorized to administer oaths, hear testimony of witnesses and receive documentary and other evidence. After the hearing, the hearing officer shall certify the record to the board, which shall include the hearing officer's proposed statement of facts, conclusions of law and recommendation. The record may include a taped recording of the proceedings of the hearing in lieu of a transcribed copy of the proceedings. The board shall receive the record and make its determination based solely on matters contained therein.
>
> (2) Any individual aggrieved by the determination of the board may appeal to the Circuit Court of the First Judicial District of Hinds County, Mississippi, in accordance with the Uniform Circuit Court Rules governing appeals to the circuit court in civil cases. Such appeal shall be made solely on the record before the board and this procedure shall be the exclusive method of appealing determinations of the board.

Hawkins argues that section 25-11-120 does not apply in this case because section 25-11-120 was not enacted until April 7, 1995. While this dispute arose before enactment, Hawkins did not retire until after that date. There is no need in this action to decide whether the pre-enactment date of dispute or the post-statutory date of retirement would control because we decide the interlocutory appeal in favor of Hawkins on other grounds.

4. In pertinent part the regulation provides:

> REGULATION 42 RULES OF HEARING PRACTICE AND PROCEDURE BEFORE THE BOARD OF TRUSTEES (Effective 2/1/96)
>
> * * * *
>
> C. EXHAUSTION OF REMEDIES.
>
> 1. No person may file an appeal with the Public Employees' Retirement System until there has been a

final administrative decision by the Executive Director, in the case of disability appeals, a final administrative decision by the PERS Medical Board. No aggrieved party may file an appeal in the Circuit Court of the First Judicial District of Hinds County, Mississippi, until a final written decision and order has been issued by the Board of Trustees. Any such appeal must be filed within thirty (30) days after the final written order of the Board of Trustees is issued or such longer periods of time as may be allowed by the Uniform Circuit and County Court Rules.

2. Failure to exhaust administrative remedies, as herein provided, shall constitute a bar to any action in the courts, to the extent consistent with the laws of this state. 45-000 CAR. 003-30 (1996).

5. Hawkins claims that he will be subjected to irreparable harm if he is required to exhaust the administrative remedies, because it is doubtful that the PERS Board would require the disclosure of a pre-suit Attorney General's opinion on the issue. We need not discuss the issue of whether Hawkins would have access to the Attorney General's opinion because eventually Hawkins would see any official opinion as it would be a matter of public record.

6. In pertinent part § 25-11-103(k) provides:

"Earned compensation" shall mean the full amount earned by an employee for a given pay period including any maintenance furnished up to a maximum of One Hundred Twenty-five Thousand Dollars ($125,000.00) per year, and proportionately for less than one (1) year of service. The value of such maintenance when not paid in money shall be fixed by the employing state agency, and, in case of doubt, by the board of trustees as defined in Section 25-11-15. In any case, earned compensation shall be limited to the regular periodic compensation paid, exclusive of litigation fees, bond fees, and other similar extraordinary nonrecurring payments.

7. This decision is limited to the peculiar facts of this case, including the facts that during the applicable years Justice Hawkins asserted to PERS that maintenance should be included and he actually tendered the amount due if maintenance were included in earned compensation to PERS.

8. Effective July 1, 1999, Miss. Code Ann. § 25-3-41 was amended to provide for per diem compensation to all Court of Appeals Judges and Supreme Court Justices. The Court does not decide the proper application of Miss. Code Ann. § 25-11-103(k) to per diem compensation.