REVISED, October 6, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60472
_____


JAMES LAWTON ROBERTSON and
LILLIAN JANETTE HUMBER ROBERTSON,

Petitioners-Appellants,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from the Decision of the United States Tax Court
_____

September 30, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

James Lawton Robertson, a former Mississippi Supreme Court justice, and his wife, Lillian Janette Humber Robertson ("the Taxpayers"), appeal from an order of the United States Tax Court finding deficiencies in income tax due from the Taxpayers for the taxable years 1990, 1991, and 1992. Justice Robertson contends that the Tax Court erred in requiring him to declare as income the amounts that the State of Mississippi reimbursed him for travel, meals, and lodging incurred in attending court sessions in Jackson, Mississippi. More particularly, he contends that the Tax Court erred in finding that Jackson, Mississippi--where the court sits-- was his "tax home" rather than Oxford, Mississippi, his place of residence. For reasons that follow, we affirm the Tax Court's

order.

I.

Justice Robertson began practicing law in Greenville, Mississippi in 1965. In 1979, he became a full-time law professor at the University of Mississippi School of Law ("the law school"), which is adjacent to Oxford, Mississippi. Justice Robertson and his wife owned a home in Oxford, were registered to vote in Oxford, conducted their banking in Oxford, registered their automobiles in Oxford, enrolled their three sons in public schools in Oxford, paid real estate taxes and claimed a homestead exemption for their home in Oxford, attended church in Oxford, and were involved in several civic organizations in Oxford.

On January 17, 1983, the Governor of Mississippi appointed Justice Robertson to the Mississippi Supreme Court to fill a retired justice's unexpired term. The Mississippi Supreme Court, which sits 157 miles away from Oxford in Jackson, Mississippi, consists of nine justices and is divided into three geographical districts. Three justices are elected to each of the three districts. Because more than nine months were left in the retired Justice's unexpired term, Justice Robertson was required to stand for election for the remainder of the term. In November 1983, he was elected without opposition. Justice Robertson ran for reelection in 1984 and won a full eight-year term that expired on December 31, 1992.

While serving on the Mississippi Supreme Court, Justice Robertson continued to teach one course each semester at the law school. Because of the distance between Oxford and Jackson, he

developed a weekly schedule to accommodate his two positions. On Sunday afternoons, Justice Robertson drove from Oxford to Jackson. He remained in Jackson from Monday through Thursday and attended to his duties on the Mississippi Supreme Court. While in Jackson, he resided in an apartment and paid monthly rent. On Thursday afternoons, Justice Robertson drove from Jackson to Oxford. He remained in Oxford from Thursday through Sunday, teaching his course at the law school on Friday afternoons and spending the weekends with Mrs. Robertson and their three sons at their Oxford home. Justice Robertson completed such round trips between Oxford and Jackson 48 times in 1990, 45 times in 1991, and 30 times in 1992.

Justice Robertson's duties as a Mississippi Supreme Court justice required him to be in Jackson at least two days out of each week that the Mississippi Supreme Court was in session--one day for panel hearings and one day for en banc hearings. At the Mississippi Supreme Court, Justice Robertson had an office, staff, and access to the State library. Nonetheless, he completed much of his judicial work at the law school library in Oxford during the weekends. He also performed various nonjudicial civic functions in Oxford, the purpose of which was in part to secure re-election.[1]

Justice Robertson was reimbursed by the State of Mississippi for some of the travel, lodging, and meal expenses he incurred while attending Mississippi Supreme Court sessions in Jackson and returning to his residence in Oxford. The Taxpayers did not report

---

[1]Justice Robertson ran for reelection in 1992, and was defeated. He resigned from the Mississippi Supreme Court on August 31, 1992.

this reimbursement as income on their federal joint income tax returns for 1990, 1991, and 1992. Moreover, the Taxpayers deducted those travel, lodging, and meal expenses that were not reimbursed by Mississippi.

In March 1996, the Commissioner of Internal Revenue ("Commissioner") issued to the Taxpayers a notice informing them of proposed deficiencies in income tax for the 1990, 1991, and 1992 tax years in the amounts of $6,400.27, $5,841.34, and $3,922.00, respectively. The Commissioner determined that the Taxpayers had underreported their income by the amount of travel, lodging, and meal expense reimbursements Justice Robertson had received from the State of Mississippi. The Commissioner also disallowed the deductions claimed by the Taxpayers for the unreimbursed travel, lodging, and meal expenses. The Taxpayers filed a petition in the Tax Court challenging the deficiencies. Following trial, the Tax Court sustained the deficiencies, with the exception of certain amounts conceded by the Commissioner.

## II.

The central issue on appeal is whether the Tax Court erred in treating Justice Robertson's reimbursed travel expenses as income to the Taxpayers, and in determining that the unreimbursed travel expenses were not deductible. Before we address the Taxpayers' specific arguments, it is useful to review the governing statutory, regulatory, and case law in this area.

As a general rule, it is firmly established that "gross income" means all income from whatever source derived. 26 U.S.C. § 61. See also Commissioner v. Schleier, 515 U.S. 323, 327 (1995).

4

This includes any economic or financial benefit conferred on an employee as compensation, whatever the form or mode by which the benefit is effected. Commissioner v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593 (1945).

Gross income does not, however, include the amount of reimbursed trade or business expenses paid to a qualifying employee under an accountable plan. 26 C.F.R. § 1.62-2(c)(2), (4). An accountable plan is one in which (1) the reimbursed expenses would otherwise be allowable as a deduction to the employee under part VI of subchapter B of the Internal Revenue Code (I.R.C. §§ 161-96), and are paid or incurred by the employee in connection with the performance of services as an employee of the employer; (2) the reimbursed expenses are substantiated by the employee; and (3) the employee returns any amounts in excess of expenses. 26 C.F.R. § 1.62-2(d)-(f). Here we are concerned only with the first requirement: whether the reimbursed expenses would otherwise be deductible.

I.R.C. § 162(a) allows as a deduction ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. This deduction includes traveling expenses incurred while "away from home" in the pursuit of a trade or business. I.R.C. § 162(a)(2). To qualify under this provision, an expense must satisfy three conditions: "(1) the expense must be reasonable and necessary; (2) the expense must be incurred while 'away from home;' and (3) the expense must be incurred 'in the pursuit of business.'" Putnam v. United States, 32 F.3d 911, 916 (5th Cir. 1994) (quoting Commissioner v. Flowers, 326 U.S. 465, 470, 66 S.Ct. 250, 252

5

(1946)).

The word "home" for purposes of business deductions under I.R.C. § 162 "does not have its usual and ordinary meaning." Putnam, 32 F.3d at 917. This court has repeatedly recognized that the term "home" means "the vicinity of the taxpayer's principal place of business and not where his personal residence is located." Id. at 916. Thus, a taxpayer's "home" for purposes of Section 162 "is that place where he performs his most important functions or spends most of his working time." Id. at 916-17. If a taxpayer has two places of business or employment separated by considerable distances, the court applies an objective test in which it considers the length of time spent at each location, the degree of activity in each location, and the relative proportion of the taxpayer's income derived from each location. See Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974); Hoeppner v. Commissioner, T.C. Memo. 1992-703 (1992); Montgomery v. Commissioner, 64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976).

Here, the Tax Court applied the above test and determined that Justice Robertson's home for purposes of Section 162 was Jackson rather than Oxford. Accordingly, because Justice Robertson's traveling expenses were not incurred while "away from home," the Tax Court concluded that they were not eligible for deduction as ordinary and necessary business expenses. The Taxpayers challenge that conclusion on several grounds, which we consider below.

## III.

In reviewing a decision of the Tax Court, we apply the same

6

standards used in reviewing a decision of the district court: questions of law are reviewed <u>de</u> <u>novo</u>; findings of fact are reviewed for clear error. <u>Estate of Street v. Commissioner</u>, 152 F.3d 482, 484 (5th Cir. 1998). The Tax Court's determination regarding the location of a taxpayer's tax home is a finding of fact, and as such is reviewed only for clear error. <u>See</u>, <u>e.g.</u>, <u>Henderson v. Commissioner</u>, 143 F.3d 497, 500 (9th Cir. 1998); <u>Weinberg v. Commissioner</u>, 639 F.2d 434, 437-38 (8th Cir. 1981).

The Taxpayers argue that the Tax Court erred in its determination that Justice Robertson's home for purposes of Section 162 was Jackson rather than Oxford. The Taxpayers observe that justices who maintain their residence outside of Jackson spend less than forty percent of the calendar year in Jackson, and that many of their duties (reading briefs and records and clerk memos, writing opinions, etc.) can be performed anywhere. The Taxpayers contend that Justice Robertson did not perform his duties as a justice of the Mississippi Supreme Court solely while in Jackson. Rather, he spent many weekends in Oxford reading briefs and writing opinions. Moreover, the Taxpayers point out that Justice Robertson's duties as an adjunct professor of law involved much more than just showing up in a classroom and teaching. He was also required to prepare for classes, to counsel students, to judge moot court arguments, to engage in discussion and conferences with faculty colleagues, to participate as an instructor in continuing legal education programs, to present papers on academic occasions, to prepare and publish scholarly articles, to grade exam papers, and to keep up with the literature in his field. These duties were

7

far more time-consuming than the teaching itself, and the Taxpayers argue that they too were performed in Oxford.

Following a careful review of the record, we conclude that the Tax Court did not clearly err in finding that Justice Robertson's tax home was Jackson. In a typical work week, Justice Robertson spent four days in Jackson and three days in Oxford. While in Jackson, all four days were committed to Justice Robertson's work as a justice of the Mississippi Supreme Court. Even assuming that Justice Robertson spent a significant part of each weekend in Oxford performing his duties both as a justice and as an adjunct professor of law, the fact remains that the greater part of his typical work week was spent in Jackson. Justice Robertson's office and staff were located in Jackson, and his most important duties-- holding panel and en banc hearings--were performed in Jackson. Justice Robertson earned $75,000 per year as a justice, and $15,000 per year as an adjunct professor, meaning that the greater relative proportion of his income was derived from his work in Jackson. In light of all these facts, we can find no clear error in the Tax Court's determination that Jackson rather than Oxford was Justice Robertson's tax home.

Additionally, the Taxpayers argue that the present case is analogous to this Court's decision in United States v. LeBlanc, 278 F.2d 571 (5th Cir. 1960), in which we determined that the expenses incurred by a justice of the Louisiana Supreme Court while traveling between his home district and New Orleans during the court term were deductible as ordinary and necessary business expenses. In LeBlanc, we carefully explained that the Louisiana

Constitution: (1) requires the justices of the Louisiana Supreme Court to be and to remain residents of their home districts; and (2) further requires the Louisiana Supreme Court to be in annual session from October through June in New Orleans. In light of this legal requirement, we concluded that it was "most certainly 'the exigencies of business'" rather than personal convenience that forced Justice LeBlanc to incur his traveling expenses. Id. at 575 (quoting Peurifoy v. Commissioner, 358 U.S. 59, 60, 79 S. Ct. 104, 105 (1958)). Consequently, "mileage, travel, carrier fares, board and lodging during the absence were deductible." Id.

The Taxpayers argue that Mississippi, like Louisiana, has imposed a residency prerequisite to run for office as a justice of the Mississippi Supreme Court. See Miss. Const. Art. 6, § 145. The Taxpayers recognize that under the Mississippi Constitution--in contrast to the Louisiana Constitution--a justice does not vacate his office by becoming a physical resident of Jackson. See id. Justice Robertson argues that notwithstanding this distinction, "[o]bviously, if a judge plans to seek reelection, he must continue residency in the district." Moreover, the Taxpayers contend that the State has expressed its strong public policy interest in maintaining the geographical diversity of its Justices by appropriating funds to reimburse the justices for their travel expenses. The Taxpayers argue that the State only has the authority to reimburse these expenses if they are what the Commissioner says they are not: expenses incurred while away from home and in pursuit of the State's business and interests. Finally, the Taxpayers challenge the Tax Court's reading of LeBlanc as too narrow. The Tax

9

Court stated that <u>LeBlanc</u> only applies in circumstances where the taxpayer is legally compelled to maintain a residence in one place and to work in another, rejecting the proposition that economic, political, and other practical necessities may also suffice to establish the fact that a taxpayer is away from home. The Taxpayers argue that Section 162 speaks of business related compulsions, not just legal compulsions. Thus, the Taxpayers conclude, it follows that other business related considerations--political, economic, or otherwise--may be just as compelling for purposes of Section 162 as the legal compulsion identified in <u>LeBlanc</u>.

We find these arguments unpersuasive. The Tax Court properly recognized that the holding in <u>LeBlanc</u> is narrow, limited to cases in which the taxpayer is legally compelled to reside in one location and to work in another.[2] In reaching its conclusion that the exigencies of business rather than personal convenience forced Justice LeBlanc to incur his traveling expenses, the <u>LeBlanc</u> panel expressly relied on the fact that Justice LeBlanc was obligated <u>by law</u> to maintain a residence in his home district and to attend court sessions some distance away in New Orleans. In the absence of such express legal compulsion, we agree with our sister circuits that Section 162 is unavailable to an elected official for expenses incurred traveling from the official's home district to the state capital. <u>See</u> <u>Montgomery v. Commissioner</u>, 532 F.2d 1088, 1091 (6th Cir. 1976) (state legislator); <u>Barnhill v. Commissioner</u>, 148 F.2d 913 (4th Cir. 1945) (state supreme court justices).

---

[2] <u>See Putnam v. United States</u>, 32 F.3 911, 917 (5th Cir. 1994); <u>Ireland v. United States</u>, 621 F.2d 731, 735 (5th Cir. 1980); <u>Steinhort v. Commissioner</u>, 335 F.2d 496,503 (5th Cir. 1964).

In the present case, Justice Robertson was not legally compelled to maintain his residence in Oxford after he became a justice of the Mississippi Supreme Court. The fact that the Mississippi Constitution imposes a residency requirement to run for the position of justice does not alter the fact that, once elected, "the removal of a judge to the state capital during his term of office shall not render him ineligible as his own successor . . . ." Miss. Const. Art. 6, § 145. Indeed, in addition to the Constitution itself, Section 25-1-61 of the Mississippi Code provides that State officers who must remove themselves to another county for official purposes "shall be deemed in law in all respects to be householders and residents of the county from which they so remove . . . ."[3] Thus, we agree with the Tax Court that LeBlanc is inapplicable in the present case.

## IV.

The Tax Court did not clearly err in finding that Jackson rather than Oxford was Justice Robertson's tax home. Likewise, the Tax Court correctly determined that LeBlanc is inapplicable in this case because Justice Robertson was not legally compelled to reside in Oxford. Because Justice Robertson's expenses were not incurred

---

[3]For the first time at oral argument, Justice Robertson cites Section 25-1-59 of the Mississippi Code for the proposition that he was legally compelled to reside in Oxford. Section 25-1-59 states: "If any state, district, county district, or municipal officer during the term of his office shall remove out of the state, district, county, or municipality for which he was elected or appointed, such office shall thereby become vacant and the vacancy be supplied as by law directed." This provision does not change our analysis, given that the more specific provisions contained in Article 6, Section 145 of the Mississippi Constitution and in Section 25-1-61 of the Mississippi Code both expressly permit a justice of the Mississippi Supreme Court to remove himself to Jackson without vacating his office.

while "away from home," the Tax Court properly concluded that they were neither deductible under Section 162 nor excludable as reimbursement under an accountable plan.

For these reasons, the decision of the Tax Court is AFFIRMED.