T.C. Memo. 2002-47

UNITED STATES TAX COURT

LON A. BJORNSTAD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16291-99.                    Filed February 20, 2002.

Lon A. Bjornstad, pro se.

<u>James E. Schacht</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's income taxes and additions to tax for the taxable
years 1990, 1992, 1993, 1994, and 1995 as follows:

|  |  | Addition to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1990 | $3,151 | $157.55 | $206.28 |
| 1992 | 3,958 | 197.90 | 172.62 |
| 1993 | 4,157 | 207.85 | 174.16 |
| 1994 | 3,301 | 165.05 | 171.30 |
| 1995 | 2,997 | 144.00 | 155.46 |

The sole issue[1] for our consideration is whether petitioner was "away from home" so as to be entitled to deduct his travel expenses under section 162(a)(2).[2]

FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Madison, Wisconsin.

Petitioner has primarily earned his living as a musician. For the taxable years in question, petitioner was a member of a band called "Dr. Bop and the Headliners" (the band). Generally, the band played in or began its road trips from Chicago. However, during his time with the band, petitioner resided with his parents approximately 10 miles outside of Madison in Stoughton, Wisconsin. Petitioner lived with his parents because Chicago was too expensive and he was trying to pay off a prior Federal tax liability. Petitioner's parents did not require him to pay a set amount for rent or living expenses. Instead, he gave them varying amounts as he was able.

Petitioner traveled to Chicago from Stoughton on Thursday or

---

[1] At trial, petitioner conceded three issues: (1) The receipt of nonemployee compensation as reported on Forms 1099-NEC, Non-employee Compensation, (2) the addition to tax for failure to file returns, and (3) the addition to tax for failure to pay estimated tax.

[2] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.

Friday, depending on whether the band had a Thursday night engagement. The band played the weekend in Chicago or traveled to another Midwestern city. Regardless of where the band played other nights, it played most Sunday nights at Andy's Night Club in Chicago. This was a "promotional" engagement through which the band hoped to receive additional bookings. Petitioner usually returned to Stoughton on Mondays.

Petitioner traveled by bus between Stoughton and Chicago. While in Chicago, he stayed in different hotels depending on availability and paid his own expenses including bus fare, meals, and hotel rates. When traveling to cities other than Chicago, the band paid for petitioner's transportation from Chicago and his lodging. Petitioner continued to pay for his own meals and his bus fare between Stoughton and Chicago.

The band paid petitioner compensation for his services in the amounts of $14,047, $17,262, $18,032, $15,107, and $11,625 during the years 1990, 1992, 1993, 1994, and 1995, respectively. These amounts did not include reimbursement of the expenses petitioner incurred when the band played outside of Chicago. The band sent petitioner a Form 1099-MISC, Miscellaneous Income, each year which reflected the amount paid as nonemployee compensation.

During 1995, petitioner left the band and was employed by the city of Madison as a bus driver. For this employment,

petitioner received $4,639 in 1995.  These wages were reported by the city on a Form W-2, Wage and Tax Statement.

Petitioner failed to file income tax returns for taxable years 1990, 1992, 1993, 1994, and 1995.  On July 15, 1999, respondent mailed petitioner a notice of deficiency for those years.  The deficiency was based on income from the band for the taxable years in question and the city of Madison for 1995.

On March 2, 2001, petitioner submitted to respondent's counsel a band engagement log, returns, and completed Forms 1040, U.S. Individual Income Tax Return, reflecting income received from the band and the city of Madison.  The returns also reflected business expenses on a Schedule C, Profit or Loss From Business, of $123 per day for the following numbers of days in Chicago:  102 days in 1990, 97 days in 1992, 98 days in 1993, 101 days in 1994, and 75 days in 1995.  Petitioner did not claim business expense deductions for his meals when the band played in cities other than Chicago.

OPINION

Section 162 allows deductions for all ordinary and necessary expenses incurred in carrying on a trade or business.  Sec. 162(a).  These expenses include traveling expenses (i.e., meals and lodging) while away from home. Sec. 162(a)(2).  However, section 162 does not allow deductions for personal, living, or

family expenses.  Sec. 262.  To qualify under section 162(a)(2), the expenses must be (1) reasonable and necessary, (2) incurred while "away from home", and (3) incurred in pursuit of a trade or business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

In the context of section 162(a)(2), the word "home" does not have its ordinary and usual meaning.  Rather, the word "home" refers to the taxpayer's principal place of business or employment and not his personal residence.  Putnam v. United States, 32 F.3d 911, 916 (5th Cir. 1994); Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).  If a taxpayer has more than one place of business, his tax "home" is:  (1) The place where he spends more of his time; (2) the place where he engages in a greater part of business activity; and (3) the place where he derives a greater proportion of his income.  Robertson v. Commissioner, T.C. Memo. 1997-526 (citing Hoeppner v. Commissioner, T.C. Memo. 1992-703), affd. 190 F.3d 392 (5th Cir. 1999).

We find that for the taxable years in question, petitioner's tax home, or principal place of employment, was Chicago and not Stoughton, Wisconsin.  By petitioner's own admission, he had only personal reasons for living in Stoughton as opposed to Chicago. In a normal week, petitioner spent 3 days a week in Stoughton and 4 days a week in Chicago.  On occasion, petitioner spent 3 days

in Stoughton, traveled to Chicago, met the band, traveled to another Midwestern city, and spent Sunday night playing at a nightclub in Chicago.

The band had its base of operations in Chicago. The band played almost every Sunday night in Chicago at the same venue. It played the other weekend nights at engagements in the Chicago area. When the band traveled to another Midwestern city on a weekend, it did so from Chicago. We also note that when the band did travel, it paid for petitioner's travel between Chicago and the engagement city--not between Stoughton and Chicago. The band also paid for petitioner's hotel room in other Midwestern cities, but did not pay for petitioner's hotel room while in Chicago.[3]

In attempting to show that Chicago was not his tax home, petitioner contends that because the band played in several Midwestern cities, he did not receive the greater portion of his income from his Chicago engagements. While the band did play in Midwestern cities other than Chicago, the record reflects that the majority of the band's engagements was in Chicago venues. Accordingly, we find that petitioner did not receive the greater portion of his income from other Midwestern cities. Petitioner's tax home was Chicago, and therefore, he is not allowed to deduct

---

[3] Petitioner, for the first time in his posttrial brief, contends that he worked during the week out of his home in Stoughton as the band's road manager at a rate of $50 per engagement. These facts do not appear in the record and are untimely raised. See Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973).

expenses of meals and lodging incurred while there, nor to deduct expenses of travel between Chicago and his residence in Stoughton.

Petitioner, however, is allowed to claim deductions, insofar as adequately substantiated, for expenses incurred while playing with the band in other Midwestern cities. Although the band paid for his transportation and lodging, petitioner paid for his own meals. Respondent, however, contends that petitioner did not substantiate the meal expenses so as to qualify under either section 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), or Rev. Proc. 94-77, section 4.03, 1994-2 C.B. 825, 827.

We agree with respondent for taxable years 1990 and 1992. The band engagement logs are indecipherable. However, for taxable years 1993, 1994, and 1995, we find that petitioner met the meals-only per diem allowance requirements set forth in Rev. Proc. 94-77, section 4.03, supra. The three band engagement logs show the number of days and places where the band performed.

This information, in conjunction with petitioner's testimony, reflects that petitioner spent the following number of days in each city for each taxable year:

|              | 1993    | 1994   | 1995   |
|--------------|---------|--------|--------|
| Indiana      |         |        |        |
| Indianapolis | 18 days | 7 days | 5 days |
| Bloomington  | 6 days  | 4 days | 4 days |
| Terre Haute  | 6 days  | 2 days | 1 day  |

| | | | |
|---|---|---|---|
| South Bend | 6 days | 2 days | 1 day |
| Fort Wayne | 6 days | 2 days | 1 day |

| | 1993 | 1994 | 1995 |
|---|---|---|---|
| Illinois | | | |
| Highland | 21 days | 18 days | 20 days |
| | | | |
| Wisconsin | | | |
| Madison | 3 days | 5 days | 2 days |

Accordingly, petitioner is entitled to per diem allowances based on the Federal meals and incidental expenses rate for each city and taxable year.[4]  41 C.F.R. ch. 301, pt.7 & app. A (1993); 41 C.F.R. ch. 301, pt.7 & app. A (1994); 41 C.F.R. ch. 301, pt.7 & app. A (1995).

We have considered all other arguments advanced by the parties, and to the extent that we have not addressed these arguments, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[4] The parties should apply the appropriate per diem rate for each city and taxable year.  41 C.F.R. ch. 301, pt.7 & app. A (1993); 41 C.F.R. ch. 301, pt. 7 & app. A (1994); 41 C.F.R. ch. 301, pt.7 & app. A (1995).